*In re* MERLE B. PRINGLE, *Petitioner.*

No. 13,525. (72 Pac. 864.)

SYLLABUS BY THE COURT.

1. LICENSE-TAX—*Interstate Commerce.* A person who takes orders from samples for goods which he engages to deliver, and which are to be shipped into this state from another state, is not engaged in interstate commerce when such orders are not transmitted to such other state, or filled there, but are filled from goods not in the original package of importation, but from goods sent to him in bulk, C. O. D., from such other state.

2. ——— *Agent Required to Pay for Goods.* A license-tax imposed upon pedlers by a city of this state does not burden the trade relations of a merchant in another state with a person who is required by such merchant to pay for goods purchased before they are delivered to him in this state.

3. ——— *Pedler Defined.* A person who has no fixed place of business, but travels about from place to place, carrying with him articles of merchandise belonging to himself, which he offers to sell, which he sells at the time he offers them, and which he then and there delivers, is a pedler.

Original proceeding in *habeas corpus.* Opinion filed June 6, 1903. Petitioner remanded.

*F. G. Drenning,* for petitioner.

*Howard J. Hodgson,* for respondent.

The opinion of the court was delivered by

BURCH, J.: The petitioner was convicted of violating a license ordinance of the city of Eureka, and adjudged to pay a fine and costs and to stand committed until the judgment should be satisfied. His time for appeal having elapsed, he asks to be discharged by the writ of *habeas corpus.*

He contends that he was engaged in interstate commerce, and hence was not subject to the penalties of the ordinance in question. His business was selling

stereoscopes and stereoscopic views. He carried a satchel of samples from place to place and solicited purchases of his wares from an inspection of such samples. In the course of his canvass he obtained a number of promises from various persons to purchase both stereoscopes and views. On one occasion he made a sale from his samples, delivering the goods and receiving payment in cash, but afterward, and on the same day, he paid the license-tax for one day. On a subsequent day he solicited Mrs. J. S. Davis to buy, and after inspecting the samples exhibited to her she agreed to take a stereoscope and at least one view. She designated the kind of stereoscope she desired, but made no selection of the view she was to receive. The petitioner noted Mrs. Davis's requirements upon a blank order form, the character of which is not disclosed, and which, when filled out, she did not sign. The same method was pursued with petitioner's other customers in the city of Eureka, except that in some cases a larger number of views was taken.

Having substantially covered the territory of the city, the petitioner sent to James M. Davis, a wholesale dealer in such wares, at St. Louis, in the state of Missouri, a blanket order for all the goods he had engaged to deliver, and for an additional number of views to meet the estimated future demands of his customers. This order did not disclose the names of any of the purchasers of any of the goods, or the kind or quantity desired by any one of them, and, when shipped, none of the goods was marked or otherwise designated for any particular individual. Davis packed in bulk, in one box, all the required articles, and sent them by express, C. O. D., to the petitioner at Eureka. Upon their arrival, petitioner paid the charges,

received the box, and proceeded to distribute its contents to his various customers. When he delivered to Mrs. Davis the stereoscope ordered by her, her husband selected six views from a large lot which petitioner then exposed for that purpose, and bought them for the sum of one dollar. Throughout the various transactions the petitioner claimed to be representing the St. Louis house.

Under these facts, it is clear that from the time the petitioner paid to the express company the price of the goods demanded by his vendor, until the time he delivered them to his customers, the goods belonged to him. Therefore, the petitioner actually sold and delivered his own goods, and, whatever the form employed or guise adopted, the orders he received were in fact taken for himself.

The foreign merchant had no trade relations whatever with the ultimate purchasers. While it may have been his duty to fill the petitioner's orders as sent in by the latter, he knew nothing of the ultimate purchasers or of their orders. Therefore the ordinance in question had no bearing whatever upon the foreign merchant or upon his business. The restrictions placed upon the method adopted by the petitioner to put himself in a position to buy laid no burden upon the trade of the person selling to him. The latter cannot complain merely because the conduct of one who desires to become a purchaser is regulated by ordinance, while such prospective purchaser is securing himself against loss in the contemplated bargain.

The petitioner cannot sustain a claim that he is entitled to his liberty under the authority of *The State v. Hickox*, 64 Kan. 650, 68 Pac. 35. In that case it was declared that restrictions upon the solicitation and procuring, by a non-resident salesman, of orders for

*In re* Pringle.

articles of commerce, to be purchased in, and imported from, another state, where the orders are subject to approval, constitute a burden upon interstate commerce. In that case the salesman actually represented a merchant of another state. The purchaser's order was sent to that merchant. That merchant reserved the right to accept or reject the orders sent in, and did pass on them. The identical order given by the purchaser was filled. ' When the goods were shipped they were shipped to the actual purchaser. At no time did the agent deliver any of the goods. In this case the petitioner merely took orders for himself, for goods which he intended to purchase, and which he did afterward purchase, and which he paid for and received in this state. The orders of the final recipients of the goods were never transmitted beyond the state, or accepted or filled by any one beyond the state, and the goods were not delivered to the carrier for transportation to them.

The petitioner cannot be allowed the rights and privileges of an importer, because such a person can only be exempt from license-taxes when he sells and delivers goods in the original package of importation. (15 A. & E. Encycl. of L., 2d ed., 297.) The petitioner's goods lost all such distinctive character, and were blended with the common property of the state as soon as he received his box. From the stock he received customers were allowed to make indiscriminate selections of views, without regard to subject or number, and to buy them and pay for them. The business was conducted with precisely the same legal effect, so far as the matter of interstate commerce is concerned, as if a merchant had opened a box of new goods bought in the wholesale market of another state, had placed them on his shelves or in his show-cases, and had sold them from there.

That the petitioner was a pedler there can be no doubt. He had no fixed place of business but traveled about from place to place. He carried with him a stock of views, which he offered for sale. He sold them at the time he offered them. He delivered them then and there, and then and there received his pay. (*City of South Bend v. Martin*, 142 Ind. 31, 41 N. E. 315, 41 Cent. L. J. 407, n.) This conduct he had repeated, and he thereby incurred the penalties imposed by the ordinance.

The ordinance itself is not such that the court can say it is flagrantly unreasonable, unjust or oppressive, and, under the authority of *In re Martin*, 62 Kan. 638, 64 Pac. 43, and the cases there cited, it cannot be declared invalid on those grounds.

Other positions taken by the petitioner are untenable, and he is remanded to the custody of the marshal of the city of Eureka.

All the Justices concurring.