C. E. LEIBENGOOD, *Appellee,* v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant.*

No. 16,495.

SYLLABUS BY THE COURT.

RAILROADS—*Transportation of Stock—Statutory Speed Limitation—Interstate Commerce.* The act requiring corporations and others operating railroads as common carriers to transport live stock within the state at a speed of not less than fifteen miles per hour, unless prevented by some unavoidable cause (Laws 1907, ch. 276), does not apply to nor affect interstate commerce; and a shipment of live stock between points in the state which passes for a short distance over the territory of another state is interstate commerce, and noncompliance with the requirements of the statute in such a shipment affords no grounds for recovery against the carrier.

Appeal from Miami district court. Opinion filed July 9, 1910. Reversed.

*John Madden,* and *W. W. Brown,* for the appellant.
*Frank M. Sheridan,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by C. E. Leibengood against the Missouri, Kansas & Texas Railway Company to recover damages resulting from an alleged negligent delay of the railway company in transporting two carloads of cattle from Beagle to Kansas City. The petition was in two counts. The first set forth a cause of action under the common law, and the second a violation of an act requiring common carriers to transport live stock at a speed of not less than fifteen miles per hour, unless prevented by some unavoidable cause. A recovery was had on the second count, which included damages for delay and an attorney's fee, and the railway company appeals.

The contention of appellant is that the shipment of the cattle was interstate, and therefore that the act

under which recovery was had is without application. It appears that the shipment in question was from Beagle, a point in Kansas, to and through Missouri for a distance of at least a mile to Kansas City, another point in Kansas. How far the cattle were transported through Missouri is not definitely shown, but the railroad over which the cattle were taken passes out of Kansas at or near Rosedale and reënters the state near the stockyards where they were delivered. The statute under which the recovery was had provides:

"SECTION 1. That all persons, firms or corporations operating railroads as common carriers shall transport all live stock received by them for transportation within this state without delay, and shall transport the same in a period of time not less than one hour for each fifteen miles of the entire distance over which said shipment of stock is transported by rail within this state, unless prevented by unavoidable cause; provided, the time consumed by stops for watering and feeding, occasioned by the requirements of law or the order of the shipper, shall not be considered a part of the time in which shipments are required to be made.

"SEC. 2. Any common carrier which fails or refuses to transport such live stock at the rate of not less than fifteen miles per hour, as herein provided, shall be liable for all damages which may be sustained by any person on that account, which damages shall include the loss resulting from a depreciation on the market, shrinkage in weight of such live stock, the loss in time of shipper, his agent or employee, and any extra expense occasioned thereby, and all other damages which are the approximate result of such failure, together with the costs in case suit is brought to recover the same, and a reasonable attorney's fee, fixed by the court on the trial of said cause. All other statutory and common-law remedies, in addition to the remedies provided herein, are hereby preserved to the shippers." (Laws 1907, ch. 276; see, also, Laws 1909, ch. 191, Gen. Stat. 1909, §§ 7116, 7117.)

Was the shipment from one point in Kansas through a portion of Missouri to another point in Kansas interstate, and, if so, is a state regulation of such a shipment

Leibengood v. Railway Co.

permissible? The shipment sought to be regulated is a single and indivisible thing. The statute purports to regulate the time which shall be consumed from the origin to the end of the transportation. If the carrier fails to transport for the whole distance within the specified time the prescribed penalties and liabilities attach. It is a regulation of a single act of transportation as a whole, and not of a part of it that may be wholly performed within the state. The effect of the regulation is direct and immediate upon a shipment that is interstate. It is unlike cases of regulating the speed of trains in cities within the state, or the receipt or delivery of freight at points in the state, or the imposition of some liability for some other default occurring entirely within the state. If the statute applies, it directly affects a single shipment which is partly within and partly without the state. According to a ruling of the supreme court of the United States such a shipment is interstate, and a regulation of it is beyond the legislative power of the state. In *Hanley v. Kansas City Southern Ry. Co.*, 187 U. S. 617, the transportation of goods on a through bill of lading from a point in Arkansas to another point in the same state, over a road which passed a short distance through Indian Territory, was held to be interstate commerce, subject to the regulation of congress, and free from interference by the state of Arkansas, which had undertaken to regulate the shipment. It was there said that "the transportation of these goods certainly went outside of Arkansas, and we are of opinion that in its aspect of commerce it was not confined within the state." (p. 620.) It was in effect held that when the subject of regulation is indivisible there can be no division of regulation, either as between states or as between the state and the nation, and that there can be no splitting of jurisdiction in proportion to the mileage

in the state seeking to regulate interstate shipments. It was also said:

"It is decided that navigation on the high seas between ports of the same state is subject to regulation by congress (*Lord v. Steamship Co.*, 102 U. S. 541) and is not subject to regulation by the state (*Pacific Coast Steamship Co. v. Railroad Commissioners*, 9 Saw. 253), and although it is argued that these decisions are not conclusive, the reason given by Mr. Justice Field for his decision in the last-cited case disposes equally of the case at bar. 'To bring the transportation within the control of the state, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the state.' " (p. 620.)

The route of carriage was out of the state a very short distance, it is true, but, as we have seen, the shipment is to be treated as a unit, and the rule in such a case would appear to be the same whether the act of transportation was outside of the state one or a hundred miles. In *The State v. Otis*, 60 Kan. 248, an act regulating the transportation of live stock and requiring the railroad company to carry the shipper free in certain cases was under consideration. The shipment originated in Luray, Kan., and ended a few yards from the state line, in Kansas City, Mo., and it was held to be interstate commerce and the regulation a violation of the commerce clause of the federal constitution. To the same effect is *Railway Co. v. Sinclair*, 77 Kan. 228. Counsel for appellee contends that as the transportation began and ended in the state it was subject to state regulation, and relies on *Lehigh Valley Railroad v. Pennsylvania*, 145 U. S. 192, and some other cases based on that decision. That case, however, relates to taxation rather than transportation. In transporting property from place to place in Pennsylvania the railway company passed for a short distance through New Jersey, but the tax which was the subject of controversy was determined upon the transporta-

tion within the state.   It was held that a state might
tax the business done in the course of a continuous car-
riage from one point to another in the state, although
the railway in accomplishing it incidentally traversed
over a part of another state.   In *Hanley v. Kansas City
Southern Ry. Co.*, 187 U. S. 617, Mr. Justice Holmes,
who wrote the opinion, made it clear that the rule of
the Lehigh Valley case did not apply to a regulation of
transportation.   In speaking of the decisions of state
courts which held that the Lehigh Valley case was an
authority for the regulation of transportation which
was partly outside of the state he said:

"These decisions were made simply out of deference
to conclusions drawn from *Lehigh Valley Railroad v.
Pennsylvania*, 145 U. S. 192, and we are of opinion
that they carry their conclusions too far.   That was the
case of a tax, and was distinguished expressly from an
attempt by the state directly to regulate the transporta-
tion while outside its borders (145 U. S. 204).   And al-
though it was intimated that, for the purposes before
the court, to some extent commerce by transportation
might have its character fixed by the relation between
the two ends of the transit, the intimation was care-
fully confined to those purposes.   Moreover, the tax
was determined in respect of receipts for the propor-
tion of the transportation within the state (145 U. S.
201).   Such a proportioned tax had been sustained in
the case of commerce admitted to be interstate. (*Maine
v. Grand Trunk Railway Co.*, 142 U. S. 217.)   Whereas
it is decided, as we have said, that when a rate is estab-
lished it must be established as a whole."   (p. 621.)

The distinction between the imposition of a tax and
the regulation of transportation as applied to a car-
rier doing interstate business was commented upon in
*Leavenworth v. Ewing*, 80 Kan. 58.   It was there said:

"The result of the authorities is that a rate on a con-
tinuous carriage from point to point within the state is
to be regarded as a unit, and when it is applied to a
shipment which passes through more than one state it
takes on an interstate character and is beyond the reg-
ulation of the state; but a different rule obtains in the

matter of taxation. The state may properly tax the property located within its borders of a corporation doing an interstate business, and may also tax that part of the business of such corporation which is done within the state." (p. 64.)

The language of the statute indicates a legislative purpose to limit its application to intrastate traffic. It refers to live stock received by carriers "for transportation within this state," and the time limit is applied to stock "transported by rail within this state." If, however, it were intended to apply to interstate commerce like the shipment in question it would be necessarily invalid. In no event can there be a recovery under the statute for negligent delay in an interstate shipment.

It follows that the judgment must be reversed and the cause remanded for further proceedings.