No. 48,102

FIRST NATIONAL BANK OF GIRARD, *Appellant,* v. BANKERS DISPATCH CORPORATION, *Appellee.*

(562 P. 2d 32)

Opinion filed March 5, 1977.

*Patrick D. McAnany,* of McAnany, Van Cleave and Phillips, of Prairie Village, argued the cause, and was on the brief for the appellant.

*R. David Lamar,* of Rushfelt, Mueller, Lamar and Druten, of Kansas City, argued the cause, and *Walter K. Disney,* of Kansas City, Missouri, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by a bank, as shipper, against a motor vehicle carrier to recover damages for loss of two packages of checks. The essential facts of the case were determined by the district court and will be considered as undisputed for purposes of this appeal. The plaintiff-appellant is the First National Bank of Girard, Kansas. We will refer to it in this opinion as plaintiff or the bank. The defendant-appellee, Bankers Dispatch Corporation, is an Illinois corporation doing business as both a common carrier and a contract carrier in the state of Kansas. We will refer to it as the defendant, the carrier, or Bankers Dispatch. Bankers Dispatch operates as a carrier under authority granted by both the Kansas Corporation Commission and the Interstate Commerce Commission.

In 1965 Bankers Dispatch began operations under its interstate commerce authority to serve the Federal Reserve Bank of Kansas City, Missouri, in the delivery of checks, commercial papers, documents, and other written instruments to its member banks, one of which is the First National Bank of Girard. Thereafter Bankers Dispatch entered into contracts with various member banks for the transportation of similar documents from the individual banks to the Federal Reserve Bank. In 1966 an oral agreement was entered into between First National Bank of Girard and Bankers Dispatch for the transportation of the bank's documents to the Federal Reserve Bank in Kansas City. There was no formal written contract between the parties entered into at this time. The evidence disclosed that the then executive vice president of Bankers Dispatch entered into an oral agreement with the president of the First National Bank of Girard to make overnight deliveries of its articles on the same terms and conditions as that of the contract entered into between Bankers Dispatch and the Federal Reserve Bank. The written contract between Bankers Dispatch and Federal Reserve Bank apparently provided for the transportation of documents by the carrier at the rate of eight cents (8¢) per ounce regardless of mileage and apparently provided that the liability of Bankers Dispatch as carrier for damages in case of lost documents was to be limited to the necessary reconstruction costs of any documents which were lost plus $50. The carrier was not to be liable for the loss of documents which could not be reconstructed. This contract was not offered or introduced into evidence at the trial.

The plaintiff bank is a correspondent bank of the Commercial National Bank of Kansas City, Kansas, and uses the facilities of the Commercial National Bank for collection of its checks. When a check is 'deposited in the Girard Bank for collection it credits the depositing customer with the amount of the check. If the check is drawn upon a distant bank, the Girard Bank forwards the check to the Commercial National Bank which undertakes to process and deposit the check to the drawer's bank account. In 1966 Bankers Dispatch and the Girard bank entered into the oral agreement mentioned above by which Bankers Dispatch agreed to deliver checks and other documents from the plaintiff bank in Girard to the Commercial National Bank in Kansas City, Kansas. These deliveries were to be subject to the oral agreement by which the liability of Bankers Dispatch in case of loss was to be limited in the manner described above.

On January 19, 1971, the plaintiff bank delivered to Bankers Dispatch two packages containing checks for transportation to the Commercial National Bank of Kansas City, Kansas. At the time of the delivery of these packages a shipping receipt was executed in the carrier's standard form which contained the following limitations of liability printed on its face:

"COMMERCIAL PAPERS, DOCUMENTS AND WRITTEN INSTRUMENTS. Unless a greater value is declared herein, the shipper agrees and declares that the value of the property described herein is released to a value not exceeding $75,000 per shipment."

In the lower left hand corner of the shipping receipt there was printed the following statement:

"The released or declared value of the contents of this shipment is hereby specifically declared to be not in excess of $_____."

The employees of the plaintiff bank did not fill in the blank space of the printed form so as to declare the value of the property to exceed $75,000. The two packages containing the checks were lost in transit by the agents of Bankers Dispatch somewhere between Girard and Kansas City. The two lost packages contained checks in the total amount of $79,384.09. Because of the loss of the checks, neither plaintiff nor the Commercial National Bank were able to forward the original checks to the various drawee banks for collection. After the loss of the checks was established, the plaintiff bank undertook to reconstruct the checks which were lost in order to obtain money on them from the various drawee banks. By

means of this reconstruction process, the bank was able to recover all but $4,058.73 of the original outstanding face value of all the checks. In the course of its reconstruction efforts the bank incurred expenses in the total amount of $768.91. On May 26, 1971, the bank made demand upon Bankers Dispatch to pay its loss resulting from the failure of Bankers Dispatch to deliver its checks to Commercial National Bank in Kansas City. In this demand letter of May 26, 1971, the plaintiff bank claimed damages for the following items: Reconstruction expenses of $768.91; interest on the loss of use of the funds representing lost checks which could be reconstructed in the amount of $1,255.95; and a further item of loss for checks which could not be reconstructed in the amount of $4,058.73. In response to this letter Bankers Dispatch admitted liability in the total amount of $2,024.86 covering reconstruction expenses and interest on the checks reconstructed, but excluding loss on the non-reconstructible checks exceeding $50.00. Bankers Dispatch took the position that its liability was limited under its oral agreement with the plaintiff bank to the reconstruction expenses and loss of use of checks which were able to be reconstructed, plus $50 for the non-reconstructible checks. Since Bankers Dispatch refused to compensate the bank for its loss on the non-reconstructible checks this action was filed on June 19, 1973.

In its petition the plaintiff bank alleged in paragraph (1) that the defendant is an Illinois Corporation and at the time of the loss on January 19, 1971, was licensed to do business as a *common* carrier in Kansas. The defendant in its answer admitted paragraph (1) of plaintiff's petition but denied any liability. Prior to trial in response to requests for admissions Banks Dispatch admitted that there was no existing written contract between the plaintiff bank and Bankers Dispatch regarding the carriage of documents and checks other than the printed shipping receipt mentioned above. Bankers Dispatch further stated that it had authority to operate within the state of Kansas pursuant to the laws and conditions of its then applicable carriers tariffs which tariffs limit defendant's liability to "reconstruction cost." The case proceeded to trial. The plaintiff bank introduced into evidence the shipping receipt heretofore mentioned and a letter from Bankers Dispatch dated February 23, 1971, confirming that Bankers Dispatch picked up the two packages on January 19, 1971, and that these packages were lost during the transportation. The bank also introduced evidence as to the extent of and expense involved in the reconstruction of the

lost checks and the value of checks which could not be reconstructed. Testimony was offered by Bankers Dispatch which showed the oral agreement made between representatives of Bankers Dispatch and the bank in 1966. Bankers Dispatch also introduced evidence which raised an issue of fact as to whether it had actually lost the checks.

After submission of the case the district court made findings of fact which are essentially the facts set forth above. The court also made the following conclusions of law: The lost checks were items moving in interstate commerce; under defendant's agreement with the Federal Reserve Bank and with plaintiff, a bill of lading filled out by the bank was to accompany each shipment, and if a declared value of more than $50 was desired, the bank was to so declare by indicating the same on the bill of lading; under the oral agreement between plaintiff bank and defendant carrier, the plaintiff could obtain higher insurance coverage by obtaining a higher shipping rate, and unless a higher value than $50 was declared by the plaintiff the defendant's liability for loss was to be limited to reconstruction costs plus $50; reconstruction costs include interest on the money during the reconstruction period; plaintiff was not entitled to damages for the non-reconstructible items; plaintiff is entitled to recover for its reconstruction costs consisting of $768.91 reconstruction expenses and interest from the date of loss until May 26, 1971, for loss of use of the funds pertaining to reconstructible items in the amount of $1,255.95. Although in its findings of fact the trial court found that the plaintiff bank had suffered a loss of $4,058.73 in checks which were unable to be reconstructed, the trial court denied recovery to the plaintiff bank for these items except to the extent of $50 as provided in the oral agreement of the parties. The trial court also awarded the plaintiff bank attorney fees in the amount of $850 and costs.

The bank has appealed to this court because the district court limited the liability of the defendant carrier to reconstruction costs of lost documents plus $50 which was the limitation of liability contained in the oral agreement of 1966 between the bank and Bankers Dispatch. The primary issue in the case is whether Bankers Dispatch, as an interstate motor carrier, effectively limited its liability to the bank to the reconstruction costs of lost documents plus $50 as provided in the oral agreement of the parties. At the outset it should be noted that the parties agree that the lost checks were in interstate commerce when the loss occurred. The record

establishes that the packages were picked up at the bank in Girard, Kansas, and were to be transported across the state line into Missouri and then back into Kansas where they were to be delivered to the Commercial National Bank in Kansas City, Kansas. Such shipments are in law considered to be interstate commerce and subject to the control of the Interstate Commerce Commission rather than intrastate shipments subject to control of the Kansas Corporation Commission. (*Leibengood v. Railway Co.*, 83 Kan. 25, 109 Pac. 988.)

In the absence of proof to the contrary the liability of a common carrier engaged in interstate commerce for loss sustained in transporting property is presumed to be its liability under the common law. At common law a carrier is liable for the full loss sustained by the shipper unless the carrier effectively limits its liability. A common carrier engaged in interstate commerce asserting a liability for loss, less than that imposed by the common law, has the burden of proof in establishing a contract for such limitation of liability in compliance with the terms of the federal statute which authorizes such limitation of liability. (*Jukes v. North American Van Lines, Inc.*, 181 Kan. 12, 309 P. 2d 692.) By statute a common carrier transporting property in *intrastate* commerce is prohibited from limiting its liability by contract. (K. S. A. 66-304.)

The federal statutes governing interstate shipments permit a carrier to limit its liability provided certain statutory conditions are complied with by the carrier. The federal statute, which permits a limitation of liability for damages for loss by carriers engaged in interstate commerce, is the Carmack Amendment to the Interstate Commerce Act, 49 U. S. C. A. § 20 (11). It provides in pertinent part as follows:

"Any common carrier, . . . or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State . . . to a point in another State, . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it . . . and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, . . . from the liability imposed; and any such common carrier, . . . or transportation company . . . shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it . . . notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation,

without respect to the manner or form in which it is sought to be made is declared to be unlawful and void: . . . *Provided, however,* That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply, . . . to property . . . received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released; . . . and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon; . . ." (pp. 114, 115.)

Bankers Dispatch agrees in its brief that the Carmack Amendment applies to the shipment involved in this case. However, it takes the position that it has effectively limited its liability by virtue of the fact that it is a contract carrier expressly authorized by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared by the shipper and hence can effectively limit its liability to an amount not in excess of the value so declared or released. The basic issue to be determined is whether Bankers Dispatch has brought itself within this exception as granted in the Carmack Amendment. We have concluded that Bankers Dispatch under the circumstances shown in the record has not brought itself within the statutory exception. Limitation of liability can be effected by a motor carrier only when in compliance with an Interstate Commerce Commission order authorizing special rates dependent upon either a declared value by the shipper *in writing* or a released value *in writing*. (*Chandler v. Aero Mayflower Transit Company,* 374 F. 2d 129 [4th Cir. 1967]; *Thomas Electronics, Incorporated v. H. W. Taynton Company,* 277 F. Supp. 639 [M. D. Pa. 1967].)

It is undisputed that the contract made in 1966 for a continuing transportation of the plaintiff bank's commercial paper by Bankers Dispatch was an oral contract. Likewise, the agreement to limit the carrier's liability for loss on non-reconstructible checks to $50 was not in writing. Nor was such limitation of liability included in the printed shipping receipt. Under the circumstances we must hold as a matter of law that the defendant carrier has failed to sustain its burden of showing that it has fully complied with the

statutory requirements of the Carmack Amendment so as to limit its liability for lost non-reconstructible checks to a total amount of $50.

It should be noted that Bankers Dispatch did effectively limit its liability for loss of commercial papers by the written limitation of liability set forth in the printed shipping receipt which was executed at the time the lost packages were delivered by the plaintiff bank to Bankers Dispatch. This limitation of liability is clear and unequivocal as to commercial papers, documents, and written instruments: Unless a greater value is declared in the shipping receipt, the shipper agrees and declares that the value of the property described in the shipping receipt is released to a value not exceeding $75,000 per shipment. Since the plaintiff bank as shipper failed to declare a greater value, the $75,000 limitation in value of the shipment is effective. However, the damages claimed by the bank for the loss of its packages do not exceed the limitation of $75,000. Hence the written limitation of liability contained in the shipping receipt is not applicable in this case.

If Bankers Dispatch desires to limit its liability in its contracts with the plaintiff bank and other banks it may do so, provided it complies with the statutory requirements. The only written contract between the plaintiff bank and Bankers Dispatch is the written instrument denominated a "freight bill-shipping receipt." This document is a bill of lading, which has been defined as a document issued by a carrier evidencing a receipt of and contract to carry and deliver goods. (13 C. J. S. Carriers, § 122; *Teller & Co., Appellants, v. Am. Ry. Exp. Co.,* 78 Pa. Super. 300 [1922]; *United Steel & Strip Corp. v. Monex Corporation,* 310 So. 2d 339, 341 [Fla. 1975.] This court has held that a bill of lading issued by a common carrier is not only a receipt for the goods delivered to the carrier for shipment but is also a contract between the carrier and the consignor as to the transportation and delivery of the goods to the consignee or other person therein designated. (*Baldwin v. Fenimore,* 149 Kan. 825, 89 P. 2d 883.)

The trouble with the carrier's position here is that it is attempting to rely on an oral contract limiting its liability when to be effective such a contract must be in writing. It must follow as a matter of law that the trial court erred in giving effect to the oral agreement between the plaintiff bank and Bankers Dispatch. Since the limitation of liability asserted by Bankers Dispatch cannot be enforced, it follows that the plaintiff bank was entitled to recover

its full damages resulting from the loss of its checks, including the value of those checks which could not be reconstructed.

Before leaving this point one other matter should be noted. The record discloses that after all the evidence had been introduced and the parties had rested, counsel filed briefs with the court. Attached to the brief of Bankers Dispatch was a copy of a report and order of the Interstate Commerce Commission authorizing Bankers Dispatch to operate as a contract motor carrier of cash letters for banks and banking institutions upon compliance with certain provisions of the Interstate Commerce Act and the pertinent rules and regulations thereunder. We agree completely with the bank that this report and order should not have been admitted into evidence or considered by the court since it was not a proper subject for judicial notice. (*Jukes v. North American Van Lines, Inc.*, supra.) If we assume, however, that it was properly before the court it nevertheless could not satisfy the requirements of the Carmack Amendment that a contract between a shipper and a carrier limiting the carrier's liability be in writing.

We now turn to an issue raised by Bankers Dispatch on its cross-appeal. Bankers Dispatch on its cross-appeal contends that there was insufficient evidence presented at the trial to sustain the findings of the trial court that the employees of Bankers Dispatch lost the packages containing the bank's checks and the amount of the plaintiff's loss. We find these contentions to be without merit. As to the liability of Bankers Dispatch there was testimony showing that the Bankers Dispatch driver received the bank's packages and that they were never delivered to the Commercial National Bank. Shortly after the loss occurred Bankers Dispatch admitted the loss of the packages and its inability to locate them. We find in the record substantial competent evidence to support the trial court's finding that Bankers Dispatch was liable for the loss. In regard to the amount of plaintiff's loss the testimony showed that out of $79,-384.09 worth of checks all but $4,058.73 were reconstructed. The trial court in its findings of fact set forth in detail the elements of the bank's loss which in our judgment were supported by the evidence.

The next point concerns the allowance of interest on the damages which the plaintiff bank is entitled to recover. At the time the packages of checks were lost the amount of the bank's loss was unliquidated. It could not be determined until the bank had an opportunity to reconstruct the lost checks and determine the expenses

involved in reconstruction. The reconstruction was completed on May 26, 1971, at which time the bank made a written demand upon Bankers Dispatch for the payment of its loss. As of that date the plaintiff bank had determined its loss to consist of the following items: $768.91 reconstruction expenses; $1,255.95 for loss on the checks which could be reconstructed; and $4,058.73 for loss on the checks which were not subject to reconstruction. The total loss to the plaintiff bank resulting from the loss of the checks was determined to be $6,083.59. The bank's damages became liquidated on May 26, 1971. A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation. Where an amount is due upon contract, either expressed or implied, and there is no uncertainty as to the amount which is due or the date on which it becomes due, the creditor is entitled to recover interest from the due date. (*Phelps Dodge Copper Products Corp. v. Alpha Construction Co.,* 203 Kan. 591, 455 P. 2d 555; *Westamerica Securities, Inc. v. Cornelius,* 214 Kan. 301, 520 P. 2d 1262.) The plaintiff bank is entitled to recover interest at the legal rate of six percent on the sum of $6,083.59 from May 26, 1971, to the date judgment is entered.

The district court properly determined the issue of liability in favor of the plaintiff bank. It also correctly determined all of the elements of damages suffered by the bank including a loss of $4,058.73 on the checks which were not subject to reconstruction. This element of damage was not allowed because the trial court erroneously concluded that Bankers Dispatch had effectively limited its liability on non-reconstructible items to the sum of $50. The question then arises whether the increased award as determined on this appeal should carry interest at the rate of eight percent from the date of the original judgment or only from the date that the increased award has been allowed. Where a money award has been modified on appeal and the only action necessary in the trial court is compliance with the mandate of the appellate court, the majority view is that interest on the award as modified should run from the date of the entry of the original judgment. It has been so held regardless of whether the appellate court reduced or increased the original award. (*The Kia Ora,* 252 F. 507 [4th Cir. 1918]; *Coyle Lines v. United States,* 198 F. 2d 195 [5th Cir. 1952]; *Kinney v. Pollak,* 225 Ala. 229, 142 So. 390 [1932]; *Beeler v. American Trust Co.,* 28 C. 2d 435, 170 P. 2d 439 [1946]; *Stockton Theatres, Inc. v.*

*Palermo,* 55 C. 2d 439, 11 Cal. Rptr. 580, 360 P. 2d 76 [1961]; *Livingston County v. Dunn,* 300 Ky. 367, 109 S. W. 2d 328 [1945]; *Johnson v. Johnson,* 250 Minn. 282, 84 N. W. 2d 249 [1957]; *Gillingham v. Shiffer-Hillman Clothing Manufacturing Co., Ltd., et al.,* [1934] O.R. 524, 4 D. L. R. 112, [affirmed], [1934] 4 D. L. R. 801; *Mascuilli v. United States,* 383 F. Supp. 50 [E. D. Pa. 1974]; annotation 4 A. L. R. 3d 1221.) The A. L. R. annotation mentioned cites some cases holding to the contrary.

The only pertinent Kansas case is *Lippert v. Angle,* 215 Kan. 626, 527 P. 2d 1016. There the judgment of the district court was reduced and affirmed on appeal. Interest at eight percent on the judgment as modified was allowed from the date of the original judgment in district court. In *Lippert* we stated the rule to be that when a money judgment is merely modified and affirmed on appeal interest on the judgment as modified should be allowed from the date the original judgment was entered in the trial court. We have concluded that under the peculiar circumstances of this case the plaintiff bank is entitled to interest at eight percent from March 21, 1975, the date when judgment was entered in plaintiff's favor in the district court. Here the district court fully determined the issue of liability and all elements of damages suffered by the plaintiff. Under these circumstances we have in effect adopted the findings of the trial court but modified the trial court's judgment by adding an additional element of loss to be recovered by the plaintiff which although determined by the trial court was erroneously denied.

Bankers Dispatch further maintains in its cross-appeal that the trial court erred in awarding attorney fees to the bank because there was insufficient evidence of the time spent by the bank's attorney or of the reasonable value of the services rendered. According to the brief filed on behalf of the bank prior to trial the bank's attorneys prepared a statement based upon time slips which recorded all of the activity in the case. At the trial the court indicated that such a statement would be unnecessary and awarded attorney fees in the amount of $850. We cannot say that the award was excessive under the circumstances. However, since the judgment of the district court has been modified and increased damages awarded to the plaintiff bank by this court, the question of attorney fees must be reopened for reconsideration by the district court. The case must be remanded to the district court with directions to enter judgment in accordance with this opinion. The district court should then proceed to determine the issue of attorney fees to be allowed the bank.

In making that determination the court should afford both parties an opportunity to be heard on the value of the services of the bank's attorneys in the district court and also in this court on the appeal. A judgment should then be entered in favor of the plaintiff bank for the attorney fees as so determined together with the costs of the action.

For the reasons set forth above the judgment of the district court finding that Bankers Dispatch is liable to the First National Bank of Girard and entering judgment in favor of the bank is affirmed. Insofar, however, as the district court erred in failing to allow the bank to recover the sum of $4,058.73 for its loss on the checks which were not subject to reconstruction, the judgment is reversed and the case is remanded to the district court with directions to enter judgment in favor of the plaintiff First National Bank of Girard in the amount of $6,083.59 with interest at six percent from May 26, 1971, to March 21, 1975, the date of the original judgment in the district court, and thereafter interest at eight percent on the sum of $6,083.59 until said judgment is paid. It is further ordered that upon remand the district court determine appropriate attorney fees to be allowed the bank in accordance with the views stated in this opinion.