(894 P.2d 925)

No. 72,026

FAMOUS BRANDS DISTRIBUTORS, INC., *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF SHAWNEE COUNTY, KANSAS, *Appellee*.

Opinion filed May 19, 1995.

*Charles N. Henson*, of Wright, Henson, Somers, Sebelius, Clark & Baker, L.L.P., of Topeka, for appellant.

*Susana L. Valdovinos*, assistant county counselor, for appellee.

Before PIERRON, P.J., RULON, J., and STEVEN R. BECKER, District Judge, assigned.

RULON, J.: Famous Brands Distributors, Inc., petitioner, appeals the decisions of the district court and the Board of Tax Appeals (BOTA) which found that petitioner did not qualify for exemption from ad valorem taxation under Art. 11, § 13(a)(2)(C) of the Kansas Constitution.

Essentially, we must determine if the district court erred when finding that petitioner's goods were not in the stream of interstate commerce under the provisions of Art. 11, § 13(a)(2)(C) of the Kansas Constitution. We conclude the court did not err and affirm.

Distilled to their essence, the material facts are as follows:

Petitioner is a wholesale distributor of wines, spirits, and beer which receives shipments of such goods from outside the state and distributes to retailers located within the state.

In 1991, petitioner, in an effort to expand its distribution capacity, decided to move its operation in Topeka from 215 Quincy to a new facility at 3741 South Park. Additionally, petitioner moved its office from the Quincy address to 2910 South Topeka Boulevard. As part of this move, petitioner closed its Wichita facility and consolidated those functions in the Topeka facility.

Eventually, petitioner applied to the City of Topeka for an ad valorem tax exemption. The initial exemption was granted by ordinance of the City of Topeka pursuant to Art. 11, § 13(a)(2)(A) of the Kansas Constitution. The City informed petitioner that the approval did not guarantee the exemption would be granted by BOTA.

After local approval, all requests for exemptions must be approved by BOTA under K.S.A. 79-213. BOTA ultimately denied petitioner's application for exemption. Petitioner subsequently appealed to the district court, and the court affirmed BOTA's decision.

## INTERSTATE COMMERCE

"K.S.A. 74-2426(c) provides that BOTA's order is subject to review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 et seq. K.S.A. 77-

621(a)(1) provides that [Famous Brands] bears the burden of proving the invalidity of the agency action." *In re Tax Appeal of Chief Industries, Inc.*, 255 Kan. 640, 643, 875 P.2d 278 (1994).

The question before us involves the interpretation of Art. 11 § 13(a)(2)(C) of the Kansas Constitution and is consequently a question of law. When determining a question of law, an appellate court's scope of review is unlimited, and the court is not bound by the decisions of the district court. *State v. Heffelman*, 256 Kan. 384, 386, 886 P.2d 823 (1994).

Art. 11, § 13 of the Kansas Constitution reads in relevant part:

"(a) The board of county commissioners of any county or the governing body of any city may, by resolution or ordinance, as the case requires, exempt from all ad valorem taxation all or any portion of the appraised valuation of: . . . (2) all buildings, or added improvements to buildings constructed after the date on which this amendment is approved by the electors of this state, together with the land upon which such buildings or added improvements are located, and all tangible personal property purchased after such date and associated therewith, used exclusively for the purpose of: . . . (C) storing goods or commodities which are sold or traded in interstate commerce, which is necessary to facilitate the expansion of any such existing business if, as a result of such expansion, new employment is created."

BOTA and the district court both found that petitioner did not qualify for the exemption because: (1) when the goods reached petitioner's warehouse for distribution within Kansas, the goods were no longer in the stream of interstate commerce; and (2) petitioner's consolidation of its business was not an expansion in light of the fact that petitioner terminated its operation in Wichita and moved it to Topeka.

Petitioner argues that the district court erred in it's interpretation of the law because it did not construe the constitutional provision in light of the purpose of the provision and intent of the framers. We disagree.

In *Board of Wyandotte County Comm'rs v. Kansas Ave. Properties*, 246 Kan. 161, 166, 786 P.2d 1141 (1990), our Supreme Court, interpreting a different provision of Art. 11, § 13, reiterated several long-standing rules of construction:

" '(1) Taxation is the rule; exemption is the exception. All doubts are to be resolved against exemption and in favor of taxation. *Manhattan Masonic Temple Ass'n v. Rhodes*, 132 Kan. 646, 649, 296 Pac. 734 (1931);

'(2) Constitutional and statutory provisions exempting property from taxation are to be strictly construed. *Lutheran Home, Inc., v. Board of County Commissioners*, 211 Kan. 270, 275, 505 P.2d 1118 (1973); *In re Board of Johnson County Comm'rs*, 225 Kan. 517, 519, 592 P.2d 875 (1979);

'(3) The burden of establishing exemption from taxation is on the one claiming it. *Seventh Day Adventist v. Board of County Commissioners*, 211 Kan. 683, 690, 508 P.2d 911 (1973) (quoting *T-Bone Feeders, Inc., v. Martin*, 236 Kan. 641, 645-46, 693 P.2d 1187 [1985]).' "

However, the above-stated rules of construction must be considered along with the equally well-established rules of constitutional construction, which provide:

(1) The primary duty of the courts in ascertaining the meaning of a constitutional provision is to try and comprehend the intent of the makers and adopters of that provision.

(2) The court must examine the language used in the constitutional provision in light of the general surrounding facts and circumstances that caused the provision to be proposed.

(3) The words of a constitutional provision should be interpreted to mean what the words imply to people of ordinary understanding, and courts should avoid unduly narrow or technical interpretations.

(4) Each word of a constitutional provision must be assigned an appropriate meaning and applied with the force it is due in light of the context in which it was used. See *Colorado Interstate Gas Co. v. Board of Morton County Comm'rs*, 247 Kan. 654, 660, 802 P.2d 584 (1990).

The answer to the issue before us turns on the definition of the phrase "storing goods . . . which are sold or traded *in interstate commerce*." (Emphasis added.) Kan. Const. Art. 11, § 13(a)(2)(C). The district court relied on several federal cases which analyzed when goods are, or cease to be, within the stream of interstate commerce.

In *County Maid, Inc. v. Haseotes*, 324 F. Supp. 875 (1971), a federal district court, for the purposes of determining if the Robinson-Patman Price Discrimination Act applied, stated three rules for differentiating between local sales of goods which originated in another state, but came to rest before being sold, and the sale of goods from another state that remained in the "flow of commerce":

"First, when goods are sent to a storage point to fill the special order of a customer, they remain in the flow of commerce until they reach that customer. Second, when there is an agreement or contract obligating the supplier to fill the needs of a particular customer, goods sent to a storage point remain in commerce even if they are not delivered to that customer immediately. Third, goods sent to an outlet for general inventory purposes leave the stream of commerce when they arrive there." 324 F. Supp. at 877.

The district court concluded that petitioner's situation fell within the above-stated third criteria because the goods were sent to the warehouse for general inventory purposes and not for any one customer.

Another case relied upon by BOTA and the district court is *Hiram Walker, Incorporated v. A & S Tropical, Inc.*, 407 F.2d 4 (5th Cir. 1969). There, the court found sales made by two Florida distributors, who sold only to retail outlets within Florida, were not in interstate commerce within the meaning of the Robinson-Patman Act. 407 F.2d at 9. However, the court also noted that the distributors' sales could be deemed as affecting interstate commerce for the purposes of the Sherman Anti-Trust Act. 407 F.2d at 8.

Petitioner argues that the phrase *sold or traded in interstate commerce* is ambiguous and could have multiple meanings, such as goods which are typically sold, have been sold, or will be sold in interstate commerce.

In *Southwest Business Systems, Inc. v. Western Kansas Xpress, Inc.*, 19 Kan. App. 2d 861, 878 P.2d 833 (1994), *rev. denied* 255 Kan. 1003 (1994), this court held that once goods which have been shipped in interstate commerce reach a point in Kansas and are placed in inventory, the interstate shipment of the goods is at an end. 19 Kan. App. 2d 861, Syl. ¶ 1. The *Southwest* court cited a number of Kansas cases in its analysis. In particular, in *In re Pringle*, 67 Kan. 364, 72 Pac. 864 (1903), our Supreme Court reviewed a case where the seller took orders based on sample products, and the merchandise was shipped from out of state. The goods were shipped to the seller, who paid for them before distributing them to the customers who had placed the orders. The *Pringle* court concluded that despite the fact the seller had represented himself

as an agent·for the out-of-state supplier, the seller's deliveries to the customers were intrastate commerce because the out-of-state supplier had no contact with the ultimate customer. Following the reasoning of these decisions, Famous Brand's inventory does not appear to be in interstate commerce.

In 1986 the Kansas Legislature adopted House Concurrent Resolution No. 5047 to submit a proposed amendment to the Kansas Constitution to the people. Approximately one year earlier, the Institute for Public Policy and Business Research at the University of Kansas had been commissioned to make an economic development study for Kansas. The final report, commonly known as the Redwood-Krider Report, made several recommendations. Recommendation No. 6 suggested a constitutional amendment authorizing local taxing jurisdictions to give property tax abatements for certain types of new and expanding businesses. Clearly, the purpose of the amendment was to spur economic growth through the use of tax abatements. However, there is no mention in the report or the other legislative history to suggest why the drafters chose to include the phrase "in interstate commerce."

Following the above-mentioned rules of judicial construction, this court must construe the challenged amendment to accomplish the purpose for which it was intended, but we must also give effect to each and every word included in the amendment. In construing the amendment, we must interpret the language strictly, and the persons claiming an exemption bear the burden of bringing themselves clearly within the provisions of the exemption. *In re Tax Appeal of Derby Refining Co.*, 17 Kan. App. 2d 377, 380-81, 838 P.2d 354 (1992), *rev. denied* 252 Kan. 1092 (1993).

Under the facts shown here, the goods located in petitioner's warehouse do not constitute goods sold in interstate commerce as required under the provisions of Art. 11, § 13(a)(2)(C) of the Kansas Constitution.

In light of the above, we need not reach other issues presented.

Affirmed.