**COUNTRY MAID, INC.**

v.

**Vasilios HASEOTES et al.**

**Civ. A. No. 68-605.**

United States District Court,
E. D. Pennsylvania.

April 2, 1971.

See also D.C., 312 F.Supp. 1116.

William S. Rawls, Philadelphia, Pa., for plaintiff.

Dolores Korman, Philadelphia, Pa., for defendants.

OPINION

DITTER, District Judge.

In this antitrust case, part of plaintiff's claim for relief is based upon al-

legations of price discrimination as prohibited by Section 2(a) of the Robinson-Patman Act. Defendants have moved for partial summary judgment and this opinion will explain our reasons for granting their motion.

Plaintiff, Country Maid, Inc., has been engaged in the processing, delivery, and sale of milk to the consuming public through its own and other retail stores. Ten of those stores are located in New Castle, Delaware, and three are situated in Delaware County, Pennsylvania. The defendants are 13 corporations and eight individuals that comprise a family business known as Cumberland Farms. Its operations are similar to plaintiff's, but on a larger scale, reaching New England, New Jersey, Pennsylvania, and Delaware. Essentially, milk is processed in New Jersey by one of the corporations, delivered to the "family's" retail outlets, and there sold to random consumers.

Plaintiff filed a four-count complaint seeking damages and injunctive relief and charging defendants with various antitrust violations.[1] Count I alleges an illegal conspiracy in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. Sections 1 and 3. Count II alleges illegal monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. Section 2. Count IV which alleged a violation of Section 3 of the Robinson-Patman Act no longer concerns us, since defendants' motion for partial summary judgment with respect to that count was granted in April, 1968.

Plaintiff alleges in Count III that Cumberland Farms has discriminated in price between purchasers of milk by delivering and selling such milk in interstate commerce to customers of its convenience dairy stores in New Castle, Delaware, at prices lower than those charged customers of its dairy stores in New England and New Jersey. The purpose of doing so, it is maintained, was to eliminate Delaware competition and competitors, including Country Maid.

The present motion is addressed only to Count III of the Complaint, and the sole issue before us is whether sufficient facts have been alleged to establish a violation of Section 2(a) of the Robinson-Patman Act, which provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States * * and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them. 15 U.S.C. Section 13 (a).

The narrow issue presented by defendants' motion is whether the sales to which plaintiff objects were made in interstate commerce within the meaning of the Act.

There are certain jurisdictional essentials which must be present before a violation of the Act can be established. First of all, the seller must be "engaged in commerce". Brosious v. Pepsi-Cola Company, 155 F.2d 99 (3rd Cir. 1946). That commerce must be interstate or foreign in nature: 15 U.S.C.A. § 12. There is no dispute in the instant case that the defendant is engaged in interstate commerce.

Secondly, the alleged discriminatory sale must occur "in commerce" as that term is used in the Act, i. e., it must have been a part of the interstate aspect

---

I. The facts out of which this action arose have been described at length in an opinion by the Honorable Ralph C. Body,

Country Maid, Inc. v. Haseotes, 299 F. Supp. 633 (E.D.Pa.1969).

of the seller's business. Cliff Food Stores, Inc. v. Kroger, Inc., 417 F.2d 203, 208 (5th Cir. 1969) ; Willard Dairy Corporation v. National Dairy Products Corporation, 309 F.2d 943, 945–946 (6th Cir. 1962), cert. denied 373 U.S. 934, 83 S.Ct. 1554, 10 L.Ed.2d 691, rehearing denied 375 U.S. 871, 84 S.Ct. 28, 11 L.Ed.2d 101 (1963). It is not enough that the goods in question originated in one state and were shipped to another. Rather it must be established that at least one of the alleged discriminatory *sales* crossed the state boundary. Cliff Food Stores, Inc., supra; Walker Oil Company v. Hudson Oil Company of Missouri, 414 F.2d 588, 589 (5th Cir. 1969), cert. denied 396 U.S. 1042, 90 S.Ct. 684, 24 L.Ed.2d 686 (1970).

■. In the instant case, defendants' milk is sold through retail outlets. The sales are local and intrastate in nature and are made to random rather than to known or specific customers. Since they are completed entirely at the retail outlets, the sales do not cross state lines in any way. Therefore, they are not "in commerce" for Robinson-Patman Act purposes.

■ Three rules have been developed by the courts to differentiate between *local* sales of goods that simply originated in another state but which came to rest before being sold, and the sale of goods from another state which remain in the "flow of commerce" and are thus subject to the Act. First, when goods are sent to a storage point to fill the special order of a customer, they remain in the flow of commerce until they reach that customer. Second, when there is an agreement or contract obligating the supplier to fill the needs of a particular customer, *goods sent to a storage point remain in commerce even if they are not delivered to that customer immediately. Third, goods sent to an outlet for general inventory purposes leave the stream of commerce when they arrive there. See Cliff Food Stores, Inc., supra; Hiram Walker, Incorporated v. A & S Tropical, Inc., 407 F.2d 4, 9 (5th Cir.) cert. denied 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969). In addition, the United States Supreme Court in Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943) has held that goods ordered to fill the anticipated needs of specific customers even in the absence of an agreement or contract obligating the supplier to fill those needs may be said to remain in commerce until they are delivered.

Applying the above rules to the instant case it is plain that the flow of commerce ends when the milk reaches the shelves of the retail stores. An undisputed affidavit by Francis N. Alger, Vice President of each of the corporate defendants, states that the sales through defendants' retail stores are consummated entirely on the premises. These sales are local transactions involving commodities that have been previously diverted from the stream of commerce and brought to rest in Delaware. The purchase of the milk was not based on the anticipated needs of specific customers nor was it purchased to meet the needs of specific customers pursuant to some understanding with those customers. The flow of commerce having been interrupted, defendants' sales are not within the purview of Section 2(a) of the Robinson-Patman Act.

The fact that defendant advertised its products in Pennsylvania and thus attracted a certain number of non-residents to its Delaware stores in no way affects the nature of the sales or makes them interstate transactions. Just as the test is not where the cow is located, so it is not where the milk is consumed or how a purchaser is notified of its price. The question is whether it came to rest in Delaware, having been diverted from the "flow of commerce." Plainly it did.

Since the plaintiff has not alleged facts sufficient to establish a violation of Section 2(a) of the Robinson-Patman Act, defendants' motion for partial summary judgment will be granted.