**INDIANA GROCERY CO., INC., Plaintiff,**

v.

**SUPER VALU STORES, INC. d/b/a Cub Foods, Markkay of Indiana, Inc. d/b/a Cub Foods, and the Kroger Company, Defendants.**

No. IP 85–176–C.

United States District Court, S.D. Indiana, Indianapolis Division.

June 18, 1986.

Robert P. Johnstone, Donald E. Knebel, Barnes & Thornburg, Indianapolis, Ind., for plaintiff Indiana Grocery Co., Inc.

David M. Mattingly, Ice Miller Donadio & Ryan, Indianapolis, Ind., for plaintiff Preston-Safeway, Inc.

Joe C. Emerson, Robert K. Stanley, Baker & Daniels, Indianapolis, Ind., N. Reed Silliman, Baker Daniels & Shoaff, Fort Wayne, Ind., for defendant Markkay of Indiana.

Bryce H. Bennett, Jr., Callahan, Riley & Hillis, Indianapolis, Ind., James E. Wesner, Ginsburg, Feldman and Bress, Washington, D.C., for defendant Super Valu Stores.

Samuel A. Fuller, Lewis Kappes Fuller & Eads, Indianapolis, Ind., Mark J. Spooner, William J. Baer, Pamela Chen, Norman Diamond, Arnold & Porter, Washington, D.C., for defendant The Kroger Co.

ENTRY

BARKER, District Judge.

This matter is before the court on three motions: 1) on February 25, 1985, defendant Super Valu Stores, Inc. ("Super Valu") moved to dismiss plaintiff's Complaint for failure to state a claim upon which relief can be granted; 2) on February 25, 1985, defendant Markkay of Indiana, Inc. ("Markkay") moved to dismiss plaintiff's Complaint for failure to state a claim upon which relief can be granted; and 3) on March 18, 1985, defendant The Kroger Company ("Kroger") moved to dismiss plaintiff's Complaint for failure to state a claim upon which relief can be granted. Each of these motions has been fully briefed by the parties.

The court, being duly advised in the premises now DENIES the motions of Super Valu, Markkay, and Kroger to dismiss the attempted monopolization count of the Complaint for failure to state a claim upon which relief can be granted, and GRANTS the motions of Super Valu and Markkay to dismiss the price discrimination claims for failure to state a claim upon which relief can be granted, for the reasons set forth in the following memorandum.

*Memorandum*

*Background*

Indiana Grocery brings this action against all three defendants for alleged

violations of Section 2 of the Sherman Act, 15 U.S.C. § 2 (1982), and against defendants Super Valu and Markkay [1] for alleged violations of Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13 (1982). Indiana Grocery alleges that from September, 1983, and continuing to the present, Cub Foods and Kroger have engaged in predatory pricing in an attempt to monopolize the Indianapolis retail grocery market and that Cub Foods has also engaged in price discrimination which has injured competition in the Indianapolis market.

In support of these allegations, Indiana Grocery alleges the following facts. Indiana Grocery does business as "Lowell's Discount Foods" and currently owns and operates twenty-seven retail grocery stores in the Indianapolis standard metropolitan statistical area ("Indianapolis market"). Indiana Grocery is locally owned and operated and is not affiliated with any national grocery chain.

Super Valu owns and operates retail grocery stores in numerous markets throughout the United States and has assets totalling over one billion dollars. Super Valu has annual sales in excess of five billion dollars and a net worth in excess of three hundred seventy million dollars. Super Valu, in ways not fully detailed in the Complaint, controls the pricing practices of Markkay. Super Valu directly or indirectly owns and/or operates three retail grocery stores in the Indianapolis market. Those three stores are doing business as Cub Foods and they control approximately fifteen percent of the Indianapolis market.

Kroger owns and operates more than one thousand, four hundred retail grocery stores throughout the United States and has assets totalling over three billion dollars. Kroger has annual sales in excess of fifteen billion dollars and a net worth in excess of one billion dollars. Kroger owns and operates thirty-two retail grocery stores in the Indianapolis market and con-

trols approximately thirty-five percent of the Indianapolis market.

Cub Foods entered the Indianapolis retail grocery market in September, 1983. Since that time Cub Foods and Kroger have continuously sold numerous grocery items in this market for prices far below their average variable cost of the sales. Several of the items sold below average variable cost are highly visible, high volume items with which Cub Foods and Kroger have attempted to attract customers from their competitors. The prices charged for these high visibility, high volume items have been substantially below normal "loss leader" and introductory prices and cannot be justified by any cost advantage in Cub Foods' or Kroger's operations.

Cub Foods has sold commodities of like grade and quality for substantially lower prices in the Indianapolis retail grocery market than it has charged in other geographic markets, including, but not limited to, Milwaukee, Wisconsin, Minneapolis, Minnesota, Green Bay, Wisconsin, and Fond du Lac, Wisconsin. The result of Cub Foods' price discrimination has been to substantially lessen competition, to tend to create a monopoly in the Indianapolis market, and to injure Indiana Grocery in its business in an amount exceeding twenty million dollars.

Cub Foods and Kroger have priced their total volume of sales in the Indianapolis retail grocery market below the average variable cost and long range incremental cost necessary to make those sales. Cub Foods and Kroger have incurred substantial losses from their predatory pricing and continue intentionally to sustain such losses. Cub Foods and Kroger have engaged in predatory pricing with the specific intent of eliminating competition and obtaining the power to raise prices to abnormally high levels in the Indianapolis market. Further, there is a dangerous probability that Cub Foods and Kroger will succeed in doing so. By reason of Cub Foods' and

---

**1.** Hereinafter throughout this Memorandum, Super Valu and Markkay are referred to as Cub Foods, when intended in a collective sense.

Kroger's attempt to monopolize the Indianapolis market, Indiana Grocery has been injured in its business in an amount exceeding twenty million dollars.

Since September, 1983, and as a result of Cub Foods' and Kroger's predatory pricing, Indiana Grocery has closed seven of its Lowell's Discount Foods stores in the Indianapolis market. Further, since September, 1983, at least twenty-seven other retail grocery stores have gone out of business in the Indianapolis market.

Since September, 1983, Indiana Grocery and other competitors have been forced by Cub Foods' and Kroger's below-cost pricing to reduce prices on some items in an effort to preserve its customer base in the Indianapolis market. As a result, Indiana Grocery and other competitors have incurred substantial losses.

### Discussion

First, Super Valu, Markkay, and Kroger have each moved to dismiss the attempted monopolization counts of Indiana Grocery's complaint for failure to state a claim upon which relief can be granted. Each movant argues that Indiana Grocery has alleged no facts to show that there is a dangerous probability that it could succeed in achieving monopoly power. Second, defendants Super Valu and Markkay move to dismiss the price discrimination count of the complaint for failure to state a claim upon which relief can be granted, arguing that Indiana Grocery has failed to allege facts necessary to support jurisdiction under the Robinson-Patman Act. Each of these motions is addressed below.

### I. "Dangerous Probability" Adequately Alleged

■ The United States Court of Appeals for the Seventh Circuit has identified the elements of attempted monopolization under Section 2 of the Sherman Act as follows:

1) a specific intent to monopolize, *i.e.*, to gain the power to control prices or to exclude competition in a line of commerce,

2) predatory or anticompetitive acts engaged in to further the purpose to monopolize, and

3) a dangerous probability of success in the relevant market which requires evidence that the defendant had sufficient market power to have been reasonably able to create a monopoly.

*Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 270 (7th Cir.1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982) (citations omitted). Each of the defendants bases its motion to dismiss on the alleged absence of facts in Indiana Grocery's complaint to establish the third element.

It is important to note at the outset that this matter is before the Court on a motion to dismiss for failure to state a claim. The Court need not decide whether Indiana Grocery can ultimately prove that there is a dangerous probability of successful monopolization. In fact, assuming the court harbored such doubts, the Complaint should not be dismissed merely because the court doubts that the plaintiff will prevail in the action. *Peterson Steels, Inc. v. Seidmon*, 188 F.2d 193, 195 (7th Cir.1951). Rather, on a motion to dismiss pursuant to Rule 12(b)(6), F.R.Civ.P., the court must decide whether at trial Indiana Grocery can prove any set of facts in support of its claim which would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. Super Valu

In the briefs filed by Super Valu in support of its motion to dismiss and by Indiana Grocery in response, the parties exhaustively argue the proper standard for determining whether a dangerous probability of successful monopolization exists. Super Valu contends that the court must look to market power (measured in terms of a firm's share of the relevant market), the strength and capacity of current competitors, the potential for market entry, the historic intensity of competition, and the impact of the legal or natural environment.

Indiana Grocery, in response, argues that whether a dangerous probability of success exists is determined on the basis of a flexible analysis of several complex and interrelated factors, more specifically, the defendants' capacity to commit the offense, the character of its conduct, and the scope of its objective.

Though both sides urge the court to consider various factors in deciding whether a dangerous probability of success exists, the court concludes that it need not, in the context of this motion, conduct such an examination and analysis. The court's inquiry is more properly focused upon what Indiana Grocery has pleaded, and not upon what it must prove, except to determine whether there exists any set of facts in support of plaintiff's claim entitling it to relief.

Indiana Grocery cites several paragraphs of the Complaint which it alleges are facts in support of its claim. In paragraph 36, Indiana Grocery states:

> As a result of Cub Foods' and Kroger's *market power* and *financial resources,* their *intent to monopolize* the Indianapolis market, and their *continuing predatory conduct,* there is a dangerous probability that Cub Foods and/or Kroger will succeed in their attempt to eliminate competition and obtain the power to control prices in the Indianapolis retail grocery market. (emphasis in brief).

In addition, other specific allegations in the Complaint arguably support plaintiff's contention that Super Valu has the capacity to create a monopoly: that Super Valu has annual sales in excess of five billion dollars, assets in excess of one billion dollars, and a net worth in excess of three hundred seventy million dollars (Complaint, ¶ 5); that Super Valu directly or indirectly owns and/or operates Cub Foods, and Cub Foods controls approximately fifteen percent of the Indianapolis market (Complaint, ¶ 7); and that Cub Foods achieved this market share in less than eighteen months (Complaint ¶ 10).

Regarding the character of Super Valu's conduct, Indiana Grocery points to paragraphs 12–17 of its Complaint, where it is alleged that, since the time Super Valu entered the Indianapolis market, it has engaged in predatory pricing well below its average variable costs and has incurred substantial losses.

Finally, regarding the alleged scope of Super Valu's objective, Indiana Grocery points to paragraph 25 of its Complaint wherein it claims that it has been forced to close seven of its retail stores as a result of Super Valu's predatory pricing. In paragraph 26, plaintiff alleges that since September, 1983, the number of grocery stores that have gone out of business in Indianapolis far exceeds the number ordinarily expected under lawful competition. And, in paragraph 28, plaintiff alleges that it and other independent competitors have incurred substantial losses which threaten to drive them out of business entirely.

It may well be, as Super Valu asserts, that Indiana Grocery will not ultimately be able to prove these allegations. However, the court must accept the allegations in the Complaint as true for purposes of this motion, and on that basis cannot conclude that Indiana Grocery has failed to allege sufficient facts to state a claim under section 2 of the Sherman Act, 15 U.S.C. § 2 (1982). Indiana Grocery's allegations address each element of a section 2 violation. They include considerable specific factual detail which the trier-of-fact must eventually consider and weigh in deciding whether section 2 has been violated. Accordingly, Super Valu's motion to dismiss the attempted monopolization claims for their failure to state a claim upon which relief can be granted is DENIED.

### B. *Markkay*

Markkay argues that, as to Markkay, Indiana Grocery has alleged *no* facts to establish there is a dangerous probability of successful monopolization. Indiana Grocery responds by arguing that it has alleged facts which demonstrate that, because of Markkay's relationship with Super Valu, Markkay may draw on Super Valu's financial resources to support its losses in

a joint attempt to monopolize the market through predatory pricing.

As stated above in section I(A) of this Entry, the court's inquiry must focus only upon what Indiana Grocery has pleaded. The Complaint can only be dismissed if it is determined that Indiana Grocery cannot prove any set of facts to support its claim which would entitle it to relief.

Markkay notes that Indiana Grocery makes only four allegations in its Complaint which expressly refer to Markkay:

1. IGC and all defendants, including Markkay, compete in the Indianapolis retail grocery market (Complaint, ¶ 1).
2. Super Valu and Markkay do business as "Cub Foods" (Complaint, ¶ 1).
3. Super Valu controls the pricing practices of Markkay (Complaint, ¶ 6).
4. Markkay is an Indiana corporation with its principal place of business in Indianapolis, Indiana (Complaint, ¶ 6).

Markkay claims that plaintiff's failure to allege Markkay's capacity to commit the offense, the character of its conduct, or the scope of its objective, except as it presumes that Super Valu and Markkay may be regarded as responsible for each other's actions, makes the Complaint fatally deficient.

Markkay's argument overlooks the fact that, in most instances in the Complaint, Super Valu and Markkay are referred to jointly as "Cub Foods," to-wit, in paragraphs 11–17 and 25–28.

More specifically, in paragraph 12 of the Complaint, Indiana Grocery alleges that, pursuant to Cub Foods' plan to drive competitors out of the Indianapolis market, Cub Foods has continuously sold numerous grocery items in this market for prices far below Cub Foods' average variable cost of the sales. Cub Foods thus allegedly has the capacity to attempt to monopolize the market by absorbing losses, at least in the short run. In addition, such an allegation raises issues as to the character of Cub Foods' conduct. Since Markkay is one of two parties jointly comprising Cub Foods,

it is reasonable to interpret the "Cub Foods" allegations as relating to and encompassing Markkay.

Though Indiana Grocery has not asserted detailed claims pertaining to the sales, net worth, and assets of Markkay, as it has for Super Valu and Kroger, Indiana Grocery has nonetheless set forth some allegations relating to Markkay's capacity to commit the offense, to the character of Markkay's conduct, and to the scope of Markkay's objective. The court is, therefore, unable to conclude that Indiana Grocery cannot prove any set of facts in support of its claims of attempted monopolization against Markkay entitling it to relief. Accordingly, Markkay's motion to dismiss the attempted monopolization count against it is DENIED.

### C. Kroger

Kroger argues that Indiana Grocery has not sufficiently alleged that Kroger poses a dangerous probability of successfully monopolizing the market. The complaint, Kroger argues, concedes that Kroger faces strong competition, because of which Kroger's market share does not and could not threaten the probable attainment of a monopoly. Further, Kroger argues that there is no allegation of prohibitive entry barriers, and, finally, the allegations in the Complaint concede that Kroger's reduced prices result from the entry of a new competitor in the market. Indiana Grocery responds by claiming that, in advancing its motion to dismiss, Kroger improperly seeks to separate the element of "dangerous probability" from the other two elements of an attempted monopolization, to-wit, predatory conduct and specific intent to monopolize, when in fact they must be viewed as interrelated when evaluating the sufficiency of the Complaint.

Again, focusing on the allegations in the Complaint, the court cannot conclude that Indiana Grocery could not prove any set of facts to support its attempted monopolization claim against Kroger. In paragraph 8, Indiana Grocery alleges that Kroger owns and operates more than one thousand, four

hundred (1,400) retail grocery stores throughout the United States and has assets totalling over three billion dollars. In addition, paragraph 8 alleges that Kroger has annual sales in excess of fifteen billion dollars and a net worth in excess of one billion dollars. Paragraph 9 of the Complaint, alleges that Kroger owns and operates thirty-two (32) retail grocery stores in the Indianapolis market and controls approximately thirty-five percent of the Indianapolis market. If believed, these allegations would be sufficient to support a finding that Kroger possesses the capacity to acquire a monopoly or attempt to acquire a monopoly.

Regarding the character of Kroger's conduct, Indiana Grocery has alleged that at or about the time Cub Foods entered the Indianapolis market, defendant Kroger drastically reduced its prices to amounts far less than the price of those goods to Kroger (Complaint, ¶ 18). Since September, 1983, according to the Complaint, Kroger has continuously sold numerous grocery items in the Indianapolis market for prices far below Kroger's average variable cost of the sales (Complaint, ¶ 19). Kroger has sold many items at prices below Kroger's cost to acquire the items, without regard for costs of transportation, handling, or other direct costs of making the sales (Complaint, ¶ 19). The items sold are highly visible, heavily advertised, and sold in large volume, and Kroger has attempted to attract customers from its competitors with unreasonable, below-cost, predatory prices (Complaint, ¶ 20). Kroger's prices for the grocery items have been substantially below normal "loss-leader" or introductory prices and cannot be justified by any cost advantage in Kroger's operations (Complaint, ¶ 21). Since September, 1983, Kroger has made the total volume of its sales in the Indianapolis market far less than Kroger's average variable costs and long-range incremental cost of making the sales (Complaint, ¶ 22). Kroger has incurred substantial losses from its predatory pricing in the Indianapolis market since September, 1983, and continues intentionally to incur such losses (Complaint,

¶ 23). Indiana Grocery also alleges in a summary allegation that Kroger has engaged in predatory pricing with the specific intent of eliminating competition and obtaining the power to raise prices to abnormally high levels in the Indianapolis market (Complaint, ¶ 35).

Regarding the scope of Kroger's objective, Indiana Grocery has included several allegations concerning the effects of Kroger's predatory pricing practices. Since September, 1983, as a result of Kroger's predatory pricing, Indiana Grocery has closed seven of its Lowell's discount foods stores in the Indianapolis market (Complaint, ¶ 25). Since September, 1983, at least twenty-seven retail grocery stores have gone out of business in the Indianapolis market, a number far in excess of the number to be expected under lawful competitive conditions (Complaint, ¶ 26). Since September, 1983, in response to Kroger's predatory conduct, Indiana Grocery has been forced to reduce prices on some items in an effort to attempt to preserve its customer base in the market (Complaint, ¶ 27). Since September, 1983, and as a result of Kroger's predatory, below-cost pricing, Indiana Grocery and other competitors have incurred substantial losses which, if continued unabated, will drive Indiana Grocery and other independent competitors out of the Indianapolis market (Complaint, ¶ 28). Finally, Indiana Grocery alleges that, by reason of Kroger's attempt to monopolize, Indiana Grocery has been and continues to be injured in its business in an amount substantially in excess of twenty million dollars (Complaint, ¶ 38).

Accepting all of these allegations as true for purposes of this motion, the court cannot conclude that Indiana Grocery has failed to allege sufficient facts to state a claim under section 2 of the Sherman Act, 15 U.S.C. § 2 (1982). The allegations are addressed to and provide specific factual support for each of the relevant factors the trier-of-fact must consider in determining "dangerous probability of success." Accordingly, Kroger's motion to dismiss for

failure to state a claim upon which relief can be granted is DENIED.

## II. Jurisdiction Under Robinson-Patman

Indiana Grocery alleges in count 1 of its Complaint, that Cub Foods has sold commodities of like grade and quality for substantially lower prices in the Indianapolis retail grocery market than it has charged in other geographic markets, and as a result, that Cub Foods has violated section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13 (1982).[2]

Super Valu and Markkay have each moved to dismiss this count of the Complaint for failure to state a claim upon which relief can be granted.

Specifically, Super Valu argues that, because of the strict jurisdictional "in commerce" requirement of the Robinson-Patman Act, any price differentials in retail sales by a local distributor between customers within the state are not within the scope of the Robinson-Patman Act. Markkay argues that Indiana Grocery has not set forth specific allegations that Markkay sells like goods at different prices to different customers or that Markkay sells in interstate commerce. Therefore, Markkay cannot be found to have violated the Robinson-Patman Act.

### A. The "In Commerce" Requirement

■ Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, prohibits:

any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are *in commerce* ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in

any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....

15 U.S.C. § 13(a) (1982) (emphasis added). Under this statute, three different "in commerce" tests must be satisfied before jurisdiction can be established. *Mayer Paving & Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763, 766 (7th Cir.1973). First, the discriminating party must be "in commerce;" second, the challenged discrimination must occur "in the course of such commerce;" and third, either or any of the purchases involved in the discrimination must be "in commerce." *Id.*

■ The third test, which is the only one at issue in the present case, has been construed uniformly to require that at least one of the two transactions which generate a discrimination when they are compared must cross a state line. *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200, 95 S.Ct. 392, 401, 42 L.Ed.2d 378 (1974). *Mayer Paving & Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763, 766 (7th Cir. 1983). Thus, if an interstate seller attempts to destroy its competitors by selling at lower prices in one state than he sells for in another state, the requirement will be met. *Moore v. Mead's Fine Bread Co.*, 348 U.S. 115, 120, 75 S.Ct. 148, 150, 99 L.Ed. 145 (1954), *reh'g denied*, 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed.2d 731 (1955); 4 Von Kalinowski, *Antitrust Laws and Trade Regulation*, § 26.02[3] (1985).

Of course, the problem arises in determining who the "seller" is if a multi-state or national distributor establishes local storage facilities or retail outlets from which its product is then sold to individuals within a state. Presumably, if the seller is the national distributor, then the sale would be "in commerce;" if the seller is

---

**2.** Section 1 of the Robinson-Patman Act, 15 U.S.C. § 13, amended Section 2 of the Clayton Act, and the new law is generally referred to as Section 2 of the Clayton Act, as amended by the Robinson-Patman Act.

the retail outlet, then the sale would be intrastate.

■ Courts addressing this problem have drawn a distinction between situations involving goods that have been physically altered and situations involving goods that remain unchanged. In the former situation, courts have generally held that the flow of commerce of the raw goods ended when they arrived at the place at which they were to be altered. *See, e.g., Central Ice Cream Co. v. Golden Rod Ice Cream Co.,* 184 F.Supp. 312, 319 (N.D.Ill.1960), *aff'd,* 287 F.2d 265 (7th Cir.), *cert. denied,* 368 U.S. 829, 82 S.Ct. 50, 7 L.Ed.2d 32 (1961). *See also Red Apple Supermarkets, Inc. v. Deltown Foods, Inc.,* 419 F.Supp. 1256 (S.D.N.Y.1976); *Bacon v. Texaco, Inc.,* 503 F.2d 946, 948 (5th Cir.1974), *cert. denied,* 420 U.S. 1005, 95 S.Ct. 1447, 43 L.Ed.2d 763 (1975). After alteration, any subsequent sale to a customer within the state is purely intrastate.

■ But three different rules are followed in situations where physically unchanged goods reach a warehouse or distribution plant: 1) when goods are sent to a warehouse to fill a customer's special order, they remain in the flow of commerce until they reach that customer, 2) when there is a contract obligating the supplier to fill the needs of a particular customer, goods sent to a warehouse remain in commerce even if they are not delivered to that customer immediately, and 3) goods sent to a warehouse or retail outlet for general inventory purposes leave the stream of commerce when they arrive at the warehouse or outlet. *Lewis v. Shell Oil Co.,* 50 F.Supp. 547 (N.D.Ill.1943). *See also Walker Oil Co. v. Hudson Oil Co.,* 414 F.2d 588 (5th Cir.1969, *cert. denied,* 396 U.S. 1042, 90 S.Ct. 684, 24 L.Ed.2d 686 (1970); *Country Maid, Inc. v. Haseotes,* 324 F.Supp. 875 (E.D.Pa.1971); *Flotken's West, Inc. v. National Food Stores, Inc.,* 312 F.Supp. 136 (E.D.Mo.1970).

Recognizing this distinction, and in view of the main requirement set forth in *Gulf Oil,* the court turns now to consider the allegations made against Super Valu and Markkay.

### B. Super Valu

■ The court notes initially that although Indiana Grocery alleges in paragraph 30 of the Complaint that commodities were "sold in interstate commerce," this allegation is a legal conclusion which need not necessarily be accepted as true. *Mescall v. Burrus,* 603 F.2d 1266, 1269 (7th Cir.1979). Considering only the facts alleged, the court concludes that Indiana Grocery has not sufficiently alleged that Super Valu made sales "in commerce," that is, across state lines.

Indiana Grocery alleges in paragraph 1 of the Complaint that Super Valu does business as Cub Foods, and in paragraph 30, that Cub Foods sold goods such as milk and eggs to customers of Cub Foods stores in Indianapolis for one price and sold milk and eggs of like grade and quality to customers of Cub Foods stores in cities in Minnesota and Wisconsin for a substantially lower price. Based on these allegations, Indiana Grocery argues that it has alleged these facts (or that these facts are within the scope of the allegations):

"Super Valu, with its headquarters in Minnesota, purchases a variety of products from manufacturers around the United States, delivers those products and products it manufactures in Minnesota to its retail outlets in Indiana and other states, at which time Super Valu sells those products to the ultimate consumer, with no intervening passage of title."

Memorandum of Indiana Grocery in Opposition to Super Valu's Motion to Dismiss, p. 38.

Though the court does not necessarily agree that the allegations in the Complaint set forth or encompass all of these facts, the facts even as argued by Indiana Grocery are insufficient to allege the requisite jurisdictional "in commerce" requirement. The allegations suggest a situation in which the goods are not altered once they arrive at the various retail outlets. As such, the goods must be considered as hav-

ing left the stream of commerce when they arrived at the retail outlet. Any subsequent sale of the goods to grocery customers, since it does not cross a state line, is purely intrastate and does not satisfy the "in commerce" requirement set forth above.

Both parties cite many cases in support of their respective positions, but most of those cited are distinguishable. However, the result reached by this court is consistent with the result reached in the three cases that are most similar factually to the present case. *See Walker Oil Co. v. Hudson Oil Co.*, 414 F.2d 588 (5th Cir.1969), *cert. denied*, 396 U.S. 1042, 90 S.Ct. 684, 24 L.Ed.2d 686 (1970); *Country Maid, Inc. v. Haseotes*, 324 F.Supp. 875 (E.D.Pa.1971); *Flotken's West, Inc. v. National Food Stores, Inc.*, 312 F.Supp. 136 (E.D.Mo. 1970). In each of these cases, retail sales to random customers were held to be not "in commerce."

Indiana Grocery even acknowledges the similarity of these cases, but argues that the result reached in each was incorrect. In support thereof, Indiana Grocery cites *Standard Oil Co. v. FTC*, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239 (1951) and *Bargain Car Wash, Inc. v. Standard Oil Co.*, 466 F.2d 1163 (7th Cir.1972). Neither of these cases is controlling here, because each one involves price discrimination at the wholesale, rather than retail, level. At the wholesale level, there is potential for injury to either competitors of the seller or competitors of a purchaser from the seller. At the retail level, there is only potential for injury to competitors of the seller. Thus, it is entirely reasonable for courts to conclude that the Robinson-Patman Act provisions apply at the wholesale level, but do not apply at the retail level.

This result is also supported by a brief comparison of the courts' construction of the language used in the Sherman Act to the construction of language used in the Robinson-Patman Act. Courts have consistently held that Congress, in enacting the Sherman Act, intended to exercise all of the power it possessed over interstate commerce. *See, e.g., United States v. Frankfort Distillers, Inc.*, 324 U.S. 293, 298, 65 S.Ct. 661, 664, 89 L.Ed. 951 (1945); *Las Vegas Merchant Plumbers Ass'n v. United States*, 210 F.2d 732, 739 (9th Cir.), *cert. denied*, 348 U.S. 817, 75 S.Ct. 30, 99 L.Ed. 645, *reh'g denied*, 348 U.S. 889, 75 S.Ct. 202, 99 L.Ed. 645 (1954); *Burke v. Ford*, 377 F.2d 901 (10th Cir.), *rev'd on other grounds*, 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967). As a result, the Sherman Act has been broadly construed to cover all monopolistic transactions that "affect" interstate commerce, no matter how local those transactions are. *Burke*, 389 U.S. at 321, 88 S.Ct. at 444; *Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203, 208 (5th Cir.1969).

However, under section 2(a) of the Robinson-Patman Act, at least one of the challenged discriminatory transactions must occur "in" interstate commerce, not merely "affect" it. *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974). Presumably, this more restrictive approach is the result of Congress' view that it intended to reach only price discrimination in interstate markets. *See id.* at 201, 95 S.Ct. at 401.

Regardless of the exact reason Congress restricted the scope of the Robinson-Patman Act, it is at least clear that it did so. And, concluding that intrastate sales by a retail outlet of unaltered goods are not "in commerce" for purposes of section 2(a) of the Act, as this court does here, is consistent with the courts' construction of section 2(a) as being narrower than section 1 of the Sherman Act.

Accordingly, Super Valu's motion to dismiss Indiana Grocery's price discrimination count for failure to state a claim is GRANTED.

### C. Markkay

Markkay argues first that Indiana Grocery asserts no claim that Markkay owns retail grocery stores in markets other than the Indianapolis retail grocery market; therefore, Indiana Grocery has not sufficiently alleged that Markkay sells like

goods at different prices to different customers, as required to state a Robinson-Patman Act claim.

Once again, Markkay's argument ignores the fact that Indiana Grocery's Complaint alleges in paragraph 1 that Super Valu and Markkay do business as "Cub Foods." Indiana Grocery then alleges, in paragraph 30 of the Complaint, that Cub Foods (that is, Super Valu and Markkay) sells like goods at different prices to different customers. This claim suffices as a claim against Markkay for price discrimination. Thus, Markkay's first ground for its motion to dismiss the price discrimination count fails.

However, Markkay's second argument has merit. Like Super Valu, Markkay argues that Indiana Grocery's allegations are not sufficient to support a claim against Markkay that the alleged discriminatory sales were made "in commerce." The allegations in the Complaint, as presently drafted, suggest only that the retail sales of items like milk and eggs were made by Cub Foods at substantially lower prices in the Indianapolis retail grocery market than it has charged in other geographic markets. There are no allegations that any sales by a single seller crossed a state line. Although the items sold by Cub Foods may have traveled in interstate commerce to the Cub Foods stores' shelves, they ceased to be "in commerce" at that point because they were unaltered goods made available for sale to random customers. The subsequent retail sales to random customers, alleged to be discriminatory by Indiana Grocery, are purely intrastate in nature. *See* section II(B), *supra.*

As such, the retail sales were not made "in commerce," as is required by the Robinson-Patman Act, and Indiana Grocery has not stated a claim against Markkay upon which relief can be granted. Markkay's motion to dismiss Count I of the Complaint is, therefore, GRANTED.

### Conclusion

For all of the foregoing reasons, the court DENIES the motions of Super Valu, Markkay, and Kroger to dismiss the attempted monopolization claims of the Complaint for failure to state a claim upon which relief can be granted, and GRANTS the motions of Super Valu and Markkay to dismiss the price discrimination claims of the Complaint for failure to state a claim upon which relief can be granted.