**J & S OIL, INC., Plaintiff,**

v.

**IRVING OIL CORP., Defendant.**

**No. Civ.A. 98–60–B.**

United States District Court,
D. Maine.

Aug. 4, 1999.

Harold Friedman, Karen Wolf, Friedman, Babcock & Gaythwaite, Portland, ME, for plaintiff.

John Hubbard Rich III, David McConnell, Perkins, Thompson, Hinckley & Keddy, Portland, ME, for defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff J & S Oil, Inc. ("Plaintiff") brings this antitrust action against Defendant Irving Oil Corp. ("Defendant") alleging predatory price discrimination in violation of 15 U.S.C. § 13(a) (Count I) and unfair trade practices in violation of 15 U.S.C. § 45 (Count II). To these counts, Plaintiff appends state law claims for interference with business relations (Count III), violation of the Unfair Sales Act, Me. Rev.Stat.Ann. tit. 10, § 1201–1209 (Count IV), and breach of contract (Count V). Before the Court is Defendant's Motion for Summary Judgment on Counts I and II of Plaintiff's Complaint and Plaintiff's Motion for Further Discovery. For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment on Counts I and II and DISMISSES the remaining state claims pursuant to 28 U.S.C. § 1367(c). Plaintiff's Motion for Further Discovery is DENIED.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c).

## II. BACKGROUND

The following are the relevant facts presented in a light most favorable to Plaintiff. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

Both Plaintiff and Defendant are Maine corporations. Plaintiff operates retail gasoline stations in Kennebec County, specifically in the towns of Winslow, Farmingdale, Manchester, and Augusta. In addition, Plaintiff sells refined petroleum products on a wholesale basis to independent gasoline stations and heating oil customers in central Maine.

Defendant operates retail gasoline stations throughout the state of Maine. Within Kennebec County, it has stations in Manchester, Gardiner, Waterville, and Augusta. In addition, Defendant is affiliated with Irving Oil Limited ("Irving Limited"), a refinery in the Canadian province of New Brunswick that converts crude oil into a number of refined petroleum products that it sells to Defendant and other carriers, including Plaintiff. While Defendant purchases refined petroleum from Irving Limited at an internal "accounting price," other carriers buy petroleum from Irving Limited at the "spot" price. The spot price is the price at which the product is available from other refineries selling in New York Harbor and elsewhere.

The predominant sources of the refined petroleum ultimately sold at retail gas stations in Maine are Irving Limited's refinery and refineries selling out of New York Harbor. Thus, no matter what brand name is displayed at retail stations in Maine, it is possible that the original source of the gas is Irving Limited. Between 1995 and 1997, Defendant imported an average of 30.58 percent of all motor gasoline refined by Irving Limited and imported into Maine.[1]

Plaintiff claims, and for purposes of this Motion Defendant does not dispute, that the gas sold by Defendant at its retail stations in Kennebec County has been priced "below cost" on many occasions since August of 1995. In other words, Defendant sold gas to consumers at a price lower than the price paid by other carriers to purchase gas at wholesale. During this same period, Defendant sold gas at its retail stations outside Kennebec County for prices higher than the below-cost prices it was charging at its stations within Kennebec County.

The market for retail gasoline in Kennebec County has been characterized as moderately competitive since June of 1995 by the Maine Attorney General. In 1995–96, the level of market concentration in Kennebec County decreased by nineteen percent from the prior year and has continued to decrease since then. The volume of retail gasoline sold in Kennebec County by Defendant totaled 7,247,000 gallons in 1995, 7,660,600 gallons in 1996, and 8,316,-000 gallons in 1997. In contrast, the volume of retail gasoline sold by Plaintiff in Kennebec County during the same three years totaled 11,178,804 gallons, 11,887,273 gallons, and 11,914,950 gallons respectively.[2] Plaintiff opened a new retail station in Augusta in July of 1997.

## III. PROCEDURAL HISTORY

Plaintiff filed its Complaint in this Court on March 3, 1998. On March 27, 1998, Defendant filed an Answer and United States Magistrate Judge Beaulieu issued a scheduling order setting July 1, 1998 as the deadline for joinder of parties and amendment of the pleadings. The order also directed the parties to complete discovery by September 16, 1998. That deadline was subsequently amended to December 16, 1998.

The parties had a phone conference with the Magistrate Judge on October 22, 1998 to discuss whether Defendant was entitled to limit its response to Plaintiff's request for information on its sales, pricing, costs, and profits to its retail stations in Kennebec County. The Magistrate Judge ruled that Defendant could not limit its disclosure in this manner.

Two months later, on December 23, 1998, Defendant filed the Motion for Summary Judgment that is the subject of this order, as well as a Motion to Bifurcate Discovery in which it sought to limit discovery to the issues of market definition, market share, barriers to entry, and market capacity.

Following a phone conference on December 23, 1998, the Magistrate Judge stayed all discovery pending resolution by this Court of Defendant's Motion for Summary Judgment and Plaintiff's anticipated Motion for Further Discovery.

## IV. DISCUSSION

Plaintiff claims that Defendant's practice of selling its retail gasoline at below-cost prices in Kennebec County constitutes a violation of 15 U.S.C. §§ 13(a) and 45. In its Response to Defendant's Motion for Summary Judgment, Plaintiff concedes

1. In its Statement of Material Facts, Plaintiff asserts that "Irving's own sales to its Maine entity and direct imports to Maine exceed 50% during relevant times in this case." (Pl.'s Statement of Facts ¶ 5.) The Court finds this statement not only undecipherable, but unsupported by the portion of the record to which Plaintiff cites.

2. These totals reflect Plaintiff's fiscal year which runs from October 1 to September 31.

that 15 U.S.C. § 45, barring unfair trade practices, provides no private right of action and withdraws that claim. The Court therefore will limit itself to an examination of Plaintiff's price discrimination and state law claims.

### A. Price Discrimination

Section 2 of the Clayton Act, as amended by the Robinson–Patman Act and codified at 15 U.S.C. § 13(a), prohibits a seller from charging different prices for the same product

> where the effect . . . may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

15 U.S.C. § 13(a) (1994). Two types of competitive injury are cognizable under the statute: primary-line injury and secondary-line injury. Primary-line injury refers to injury to competition among the direct competitors of the discriminating seller. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). Secondary-line injury occurs when a discriminating seller offers the same product to retailers (or wholesalers) at different prices, thereby injuring competition between them. *See Jefferson County Pharmaceutical Ass'n v. Abbott Labs.*, 460 U.S. 150, 178 n. 6, 103 S.Ct. 1011, 74 L.Ed.2d 882 (1983) (O'Connor, J., dissenting).

To establish an injury to competition under a primary-line theory, a plaintiff must demonstrate that (1) the prices complained of are below an appropriate measure of the discriminating seller's costs; and (2) the discriminating seller has a reasonable prospect of eventually recouping the investment it made in below-cost pricing.[3] *See Bridges v. MacLean–Stevens Studios, Inc.*, 35 F.Supp.2d 20, 27 (D.Me.1998) (citing *Brooke Group Ltd.*, 509 U.S. at 223–24, 113 S.Ct. 2578).

As set forth in its Complaint, Plaintiff's theory of the case appears to be that Defendant intended to establish itself as the dominant retailer in Kennebec County by eliminating competition from Plaintiff. According to Plaintiff, Defendant's dominance of the retail market for gasoline in many parts of Maine enabled it to charge below-cost prices in Kennebec County. Plaintiff claims that this predatory pricing practice, begun in August of 1995, caused it to lose profits and presents a substantial risk of creating a more highly concentrated market for retail gasoline in Kennebec County and the state of Maine, thereby injuring competition. Though Plaintiff does not identify it as such, the facts alleged, if true, would constitute a primary-line injury.

While Defendant concedes for purposes of summary judgment that its price for retail gasoline in Kennebec Country was below-cost, it asserts that Plaintiff has not established a genuine issue of material fact as to whether Defendant had a reasonable prospect of recouping its investment.[4]

---

**3.** In addition to these substantive requirements, section 2(a) of the Robinson–Patman Act contains a jurisdictional requirement: the statute applies only to those discriminatory sales that take place "in commerce." *See Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 189 (1st Cir.1996); *see also* 1A Phillip E. Areeda & Herbert Hovencamp, *Antitrust Law* ¶ 267c (Aspen Law & Business 1997). In the context of a primary-line injury, the "in commerce" requirement has been interpreted to mean that the product exchanged in at least one of the sales, whether the below-cost sale or the sale to which the

below-cost sale is being compared, must cross a state line. *See Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200–201, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974); *see also* Areeda & Hovencamp, *supra*, ¶ 267c.

**4.** Defendant also argues that Plaintiff's claim does not meet the statute's threshold "in commerce" requirement because neither the gasoline sold at Defendant's retail stations in Kennebec County at below-cost prices, nor the gasoline sold at its retail stations elsewhere in Maine at higher prices, crossed a state line in the course of the sales. Plaintiff responds

Plaintiff counters that any failure to establish a genuine issue of material fact with respect to recoupment is due to Defendant's refusal to comply with discovery. Plaintiff argues that consideration of Defendant's Motion for Summary Judgment is consequently premature and moves that the Court allow discovery to continue pursuant to Fed.R.Civ.P. 56(f).

██ Establishing that a defendant was reasonably likely to recoup its investment in below-cost pricing calls for proof that (1) its pricing practice is capable of producing

the intended effect on its competitor, either driving the competitor out of business or disciplining it to raise its prices to a supracompetitive level within a disciplined oligopoly[5] and that (2) it has sufficient market power to charge and maintain supracompetitive prices within the relevant market. *See Brooke Group Ltd.,* 509 U.S. at 225, 113 S.Ct. 2578; *see also* 3 Philip E. Areeda & Herbert Hovencamp, *Antitrust Law* ¶¶ 745d & e (1996). The parties focus on the second of these requirements in their briefs and so shall the Court.[6]

that Defendant's sales of retail gas to its customers in Maine were "in commerce" because the gas originated at Irving Limited's refinery in Canada.

It appears that Plaintiff is relying on an exception, established by the Supreme Court in *Standard Oil Co. v. FTC,* 340 U.S. 231, 237–38, 71 S.Ct. 240, 95 L.Ed. 239 (1951), to the "in commerce" requirement for goods which are sold intrastate, but nevertheless remain in the "flow of commerce." Cases from other circuits interpreting *Standard Oil* have found the "flow of commerce" rationale applies
(1) Where [goods] are purchased by the retailer upon the order of a customer with the definite intention that the goods are to go at once to the customer; (2) where the goods are purchased by the retailer from the supplier to meet the needs of specified customers pursuant to some understanding with the customer, although not for immediate delivery; and (3) where the goods are purchased by the retailer based on the anticipated needs of specific customers.
*Cliff Food Stores, Inc. v. Kroger, Inc.,* 417 F.2d 203, 210 (5th Cir.1969) (citing *Walker Oil Co. v. Hudson Oil Co.,* 414 F.2d 588, 590 (5th Cir.1969)).
There is no clear First Circuit precedent on this issue. The case cited by Defendant, *Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp.,* 79 F.3d 182, 189–90 (1st Cir. 1996), is distinguishable because the refined oil at issue in that case never crossed state lines: the oil was refined in Puerto Rico and the relevant sales where made by the refinery to wholesalers in Puerto Rico. On the other hand, the case relied upon by Plaintiff, *Rio Vista Oil, Ltd. v. Southland Corp.,* 667 F.Supp. 757 (D.Utah 1987) has been criticized by a leading commentator in the field and flatly contradicted by the decisions of other courts. *See* Areeda & Hovencamp, *supra* note 3, ¶ 267c; *see also Indiana Grocery Co. v. Super Valu Stores, Inc.,* 647 F.Supp. 254, 261 (S.D.Ind.1986) (holding retail sale of grocer-

ies not "in commerce"); *Cliff Food Stores, Inc.,* 417 F.2d at 210 (same).

Clearly, the case law regarding the "in commerce" requirement is unsettled. The Court declines to reach the issue here, however, in light of its finding that Plaintiff has failed to make out a genuine question of material fact as to the substantive elements of its price discrimination claim.

5. This latter effect, called "oligopolistic price coordination" or "conscious parallelism," occurs when firms that share monopoly power in a highly concentrated market "[set] their prices at a profit-maximizing, supracompetitive level by recognizing their shared economic interest and their interdependence with respect to price and output decisions." *Brooke Group Ltd.,* 509 U.S. at 227, 113 S.Ct. 2578.

6. With respect to the first requirement, Plaintiff's Complaint asserts that Defendant instituted its below-cost pricing strategy in August of 1995 with the credible intention of putting Plaintiff out of business in Kennebec County. Though Defendant does not press the point, the Court finds that Plaintiff has not created a genuine issue of fact as to whether it was adversely affected by the below-cost pricing, much less as to whether it was in danger of going out of business.

It undisputed that Plaintiff currently operates retail gasoline stations in Winslow, Farmingdale, and Manchester, just as it has since 1995, the beginning of the alleged predatory period. Moreover, Plaintiff acknowledges that it opened a new station in Augusta in July of 1997. Beyond a bare allegation in the Complaint, there is no indication that these stations have lost money. Indeed, the affidavit of William Norwood, Plaintiff's Chief Financial Officer, does nothing to substantiate Plaintiff's claim of lost profits, and there is evidence that the volume of retail gas sold in

■ To demonstrate that a defendant has sufficient market power to maintain supracompetitive prices long enough to reap the benefit of its investment in below cost pricing, a plaintiff must "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir.1995); *see also Brooke Group Ltd.*, 509 U.S. at 226, 113 S.Ct. 2578 (noting relevance of market concentration, barriers to entry, and capacity of defendant to absorb market shares of rivals to market power analysis). Defining the relevant market requires identification of both the product at issue and the geographic market for that product. *See Coastal Fuels of P.R., Inc.*, 79 F.3d at 196 (determining relevant market in context of monopoly claim).

Defendant posits that the relevant market in this case is the market for retail gasoline in Kennebec County and argues it is entitled to summary judgment because Plaintiff has not raised a genuine issue of fact as to Defendant's dominance in that market or the existence of structural conditions that would stifle competitors.

At the heart of Plaintiff's Response to Defendant's Motion for Summary Judgment is its contention that it has not received adequate discovery to allow it to perform an analysis of market power. Specifically, Plaintiff asserts that it needs "the volume of product sold by Irving at

Kennebec County by Plaintiff exceeded that sold by Defendant each year from 1995 to 1997.

Plaintiff's claim that it requires additional discovery to establish the fact or probability of its own injury is unavailing. Proving such injury "requires an understanding of the extent and duration of the alleged predation, the relative financial strength of the predator and its intended victim, and their respective incentives and will." *Brooke Group Ltd.*, 509 U.S. at 225, 113 S.Ct. 2578. Information about Plaintiff's own financial strength, incen-

its refinery, the price at which it sold this product to others and to itself, who Irving's customers were and where the product ended up, and the corporate relationship between Irving's entities." (Ernest T. Kendall, Aff. ¶ 13.) In support of this argument, Plaintiff resorts to a theory of liability different from the one presented in its Complaint: its Response appears to allege that Defendant is likely to gain control over the market for retail gasoline because Defendant, through Irving Limited, currently controls the supply of refined gasoline available to retail outlets in the state of Maine. Plaintiff also suggests for the first time that the relevant market should be defined with reference to wholesale, as well as retail, gasoline and that the geographic market is much larger than Kennebec County because "if Irving sells refined product to every retailer in Kennebec County, then consumers must leave Kennebec County to obtain alternative product." (Pl.'s Resp. Def.'s Mot. Summ.J. at 12.)

■ The Court finds that Plaintiff's allegations bear little, if any, connection to the required elements of a price discrimination claim. First, the Court observes that Plaintiff's definition of the relevant market reflects a flawed understanding of that concept. For one thing, Plaintiff's Complaint does not allege, nor does the record support, a claim that Defendant discriminated in its sales of wholesale gasoline. Thus, wholesale gasoline has no relevance to the definition of the market in this case. Plaintiff's assertion that the geographic market for retail gasoline is

tives and will, if not those of its competitor, are well within Plaintiff's control, yet it has produced no evidence of any ill-effect despite four years of alleged predation. The Court thus finds that Plaintiff has failed to meet its burden to show that Defendant's below-cost pricing could drive it from the retail gasoline market. Furthermore, the suggestion in Plaintiff's brief that Defendant's pricing strategy was intended to discipline Plaintiff to raise its own prices to a supracompetitive level within an oligopolistic market also is completely without support.

larger than Kennebec County also misses the mark. Simply put, the geographic market for retail gasoline depends on how far individuals are willing and able to travel to purchase the product. *See Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 346 (8th Cir.1995) ("the geographic market encompasses the geographic area to which consumers can practically turn for alternative sources of the product"). While the Court does not deny the possibility that people will travel beyond county lines to purchase gasoline, it finds that Plaintiff has failed to establish a factual issue as to this matter and that none of the discovery it requests is reasonably calculated to do so. *See id.* at 346 (observing that information regarding practical alternative sources is rarely available from defendant) (citing H. Hovencamp, *Federal Antitrust Policy,* § 3.6d at 113–14).

Second, Plaintiff's claim that additional discovery will reveal that Defendant, through Irving Limited, has the ability to control the price at which gasoline is available to retailers in Maine and thereby can limit the capacity of its rivals to increase their output in the short run is similarly unpersuasive. Not only does this argument raise a question about whether Plaintiff has brought suit against the appropriate party, it ignores the affidavit testimony of Plaintiff's own expert which indicates that Irving Limited is not the only source from which Maine retailers can obtain gasoline. Indeed, according to Plaintiff's expert, "the predominant sources of imported refined products in Maine are the Irving ... refinery *and* New York Harbor." (Kendall Aff. ¶ 8.) (emphasis added). If the price of Irving Limited's refined petroleum price plus transportation costs exceeded the spot price plus transportation costs of petroleum available at New York Harbor, Maine retailers could purchase petroleum at New York Harbor. (Kendall Aff. ¶ 8.) The existing evidence thus indicates that any attempt by Defendant to limit its rivals' output capacity would be unsuccessful. Moreover, much of the evidence necessary

to demonstrate otherwise relates to alternate sources of refined petroleum and therefore is beyond the scope of Plaintiff's requested discovery.

Lastly, there is no evidence of significant barriers to entry in the retail gasoline market. In fact, Defendant has offered evidence that entry into the retail gasoline market can be accomplished with an initial capital outlay of approximately $250,000.00 to $280,000.00, some of which would be advanced by a gasoline supplier. Defendant further asserts that the cost of leasing a gasoline-only station in the Manchester/Augusta area is about $1,200.00 per month, while the cost of leasing a station in that area that also offers in-store sales is about $2,600.00 per month. The Court finds no reason why Plaintiff could not have presented contrary evidence on this point since such information is not in the exclusive control of Defendant. In the absence of such evidence, the Court can only conclude that Defendant would be unable to maintain supracompetitive retail prices because such prices would be undercut by new entrants to the market.

The Supreme Court recently has observed that "the prerequisites to recovery [in a price discrimination case] are not easy to establish" and that such claims are "rarely tried, and even more rarely successful." *Brooke Group Ltd.*, 509 U.S. at 226, 113 S.Ct. 2578 (internal quotations omitted). In the present case, Plaintiff has failed to put forth a coherent theory of liability or evidence that would satisfy the elements of price discrimination under any theory, nor has it shown how the discovery it requests from Defendant would remedy these deficiencies. Defendant's Motion for Summary Judgment on Plaintiff's price discrimination claim therefore is granted.

## B. State Law Claims

Plaintiff has asserted claims under state law for interference with business relations and breach of contract, as well as a claim under the Unfair Sales Act, Me.Rev.Stat.

Ann. tit. 10, §§ 1201–1209. In light of the fact that the Court has dismissed Plaintiff's federal antitrust claims by way of summary judgment, the Court declines to exercise its supplemental jurisdiction over these remaining claims. *See* 28 U.S.C. § 1367(c)(3); *see Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 896 (1st Cir.1992) ("Once the court dismissed some of the federal claims and resolved the others before trial by summary judgment, it had the discretion also to dismiss the pendent state claims."); *Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.1995) ("once the court determined so far in advance of trial that no legitimate federal question existed, the jurisdictional basis for plaintiff's pendent claims under Puerto Rico law evaporated"). Plaintiff, of course, is free to pursue these claims in state court.

### IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's Motion for Summary Judgment as to Counts I and II of Plaintiff's Complaint and DISMISSES Counts III, IV and V. Plaintiff's Motion for Further Discovery is DENIED.

*SO ORDERED.*